IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 FEB -6 AM II: 00

U.S. DISTRICT COURT
N.D OF ALABAMA

AARON LEE JONES,          )
                          )
          Petitioner,     )
                          )
vs.                       )    Case No. CV 00-J-3608-S
                          )
DONAL CAMPBELL[1], Commissioner )
of the Alabama Department )
of Corrections, and the   )
ATTORNEY GENERAL OF THE   )
STATE OF ALABAMA,         )
                          )
          Respondents.    )

**ENTERED**

FEB 6 2004

## <u>MEMORANDUM OPINION</u>

        This is an action by an Alabama state prisoner pursuant to 23
U.S.C. § 2254, challenging the constitutional validity of the
conviction he received in the Blount County Circuit Court on
December 10, 1982, for capital murder, for which he was sentenced
to death.  The petitioner, Aaron Lee Jones, with the assistance of
an attorney, filed the instant petition for writ of habeas corpus
on December 15, 2000.  He is incarcerated at Donaldson Correctional
Facility in Bessemer, Alabama.

---

        [1]  The court judicially knows that, during the pendency of
this case, Donal Campbell replaced Joe Hopper as the Commissioner
of the Alabama Department of Corrections.  Consequently, Mr.
Campbell is hereby substituted for Mr. Hopper.

27

## I.  PROCEDURAL HISTORY

On June 28, 1979, the petitioner and a co-defendant, Arthur Lee Giles, were charged with capital murder in the stabbing and shooting deaths of Carl and Willene Nelson.  Jones was convicted on July 28, 1979, after a jury trial, of capital murder.  He was represented pre-trial by Thomas L. Roundtree, who was appointed by the court.  A few days before trial began, Jones employed Jack G. Davis to represent him.  Accordingly, Roundtree sought to withdraw on July 23, 1979, and Davis sought a continuance in order to allow counsel time to prepare for trial.  The court denied the motion to continue, and denied Roundtree's motion to withdraw, instructing Roundtree and Davis to "cooperate in the preparation and presentation" of the defense.  Lee Butcher, a lawyer in practice with Davis, also filed an appearance on July 25, 1979.  On July 28, 1979, a jury found Jones guilty of capital murder and fixed his punishment at death.  The trial judge entered an order imposing the death penalty on August 17, 1979.

Petitioner sought to have Davis and Butcher appointed as his counsel on appeal, but the court denied the motion, finding that neither of the attorneys had practiced criminal law for five years.  The court appointed Roundtree to represent Jones in his appeal to the Alabama Court of Criminal Appeals.  The Alabama Court of Criminal Appeals remanded the case for a new trial on the basis of Beck v. Alabama, 447 U.S. 625 (1980), and Ritter v. State, 403 So.

2d 154 (Ala. 1981), determining that petitioner was entitled to a new trial in light of Supreme Court precedent that a jury in a capital case must be given an option of finding the defendant guilty of a lesser included non-capital offense.  Jones v. State, 403 So. 2d 1 (Ala. Crim. App. 1981).

Petitioner was re-tried in accordance with the procedures outlined in Beck, and was again convicted on December 10, 1982.  He was represented at trial by Davis and George M. Boles.[2]  After a separate sentencing phase of trial, the jury recommended a sentence of death by electrocution.  The judge then conducted a sentencing hearing on aggravating and mitigating circumstances, and entered an order imposing the death penalty on December 28, 1982.

The evidence presented at the 1982 trial was summarized by the Alabama Court of Criminal Appeals as follows:

> Tony Nelson testified that on the morning of November 10, 1978, he was sleeping with his ten-year-old brother, Charlie, in one of the bedrooms of his parents' home in the Rosa community in rural Blount County, Alabama.  His thirteen-year-old sister, Brenda, was sleeping with their parents, Willene and Carl Nelson, in another bedroom.  Tony's grandmother was sleeping by herself in a third bedroom of the home.
>
> At 3:27 a.m. Tony was awakened by a disturbance inside the home.  When the light in his bedroom was turned on, he saw Arthur Lee Giles, a former employee of his father,

---

[2]     Mr. Boles had been practicing law since 1968 - so in 1982, at petitioner's second trial, he had been practicing 14 years - and had criminal case experience through his work with the District Attorney's office. (R. 32 at 56).  It is also noteworthy that petitioner originally retained Mr. Davis. (R. at 121-22).

standing in the doorway of Tony's bedroom.  Tony's father appeared and asked Giles to leave.  Tony got out of bed and followed Giles to make sure Giles left as directed. As Tony stepped out the back door of the home Giles shouted "here," and shot him twice, once in the neck and once in the chest.  Giles, then, re-entered the Nelsons' home.  Tony made an effort to go and get a gun, but was unable to do so due to his injuries.  Instead, he crawled to, and hid under, his father's truck.  Shortly, thereafter, he heard Giles and another man exit his parents' home.  He saw the men only from the waist down. He heard one of them say that they needed to find Tony and that the other man should "get the money."  After they left, Tony went back inside.  In his parents' bedroom he found his mother, his father, his sister, and his brother.  All four had been severely wounded and there was blood all over them.  Charlie and Brenda responded when Tony asked if anyone was still alive.  His parents were dead.  Tony rushed Brenda and Charlie to the hospital where all three, including Tony, were treated for their wounds.

Charlie Nelson testified that he saw Giles when his father, Carl Nelson, asked Giles to leave the home.  He saw Tony leave and heard two gunshots.  Giles, then, reappeared and shot Charlie's grandmother, who was standing in the doorway to Charlie's bedroom.  Giles proceeded to Charlie's parents' bedroom from where Charlie heard more gunshots.  Charlie ran to his parents' bedroom, where he saw Giles and another man, whom he positively identified at trial as the appellant.  He realized that his mother, his father and his sister had all been shot.  He jumped on top of his sister to protect her from further harm.  As he lay there, he saw the appellant stab his mother and father with a knife.  His mother and father were both moaning as the appellant repeatedly stabbed them.  The appellant turned and stabbed Charlie's sister Brenda, who had already been shot above one eye.  Charlie was hit in the head several times, after which the appellant stabbed him twice in the back.

On cross-examination Charlie admitted that during appellant's first trial Charlie had stated that Giles and the appellant appeared to be drunk.  He also stated that Giles "ordered the appellant around" and directed the appellant to stab his victims.

-4-

Brenda Nelson confirmed those parts of Tony's and Charlie's testimony as to things she had witnessed. She identified the appellant at trial as the man she saw repeatedly stabbing her mother. She stated that Giles was the one that shot her, Brenda, in the head.

Dr. Joseph Embry of the Alabama Department of Forensic Science testified that Willene Nelson died from multiple stab wounds that damaged her heart, lungs, and kidneys. Her body received 29 knife wounds (17 stab wounds and 12 slash wounds), numerous lacerations and abrasions about the head from a blunt instrument, and one gunshot wound to the left shoulder. Dr. Embry testified that Carl Nelson died from a combination of gunshot wounds and stab wounds. He was shot once through the heart and once in the left arm. He was stabbed, approximately, eight times, including a stab wound in the neck which severed his spinal cord. He also received numerous blunt instrument abrasions about the head. Dr. Embry testified that Carl Nelson was alive when he was stabbed in the neck.

Billy Irvin, an investigator with the Blount County Sheriff's Department, testified that he interviewed the appellant at 8:15 a.m. on November 11, 1978. During this interrogation the appellant confessed to his participation in the events at the Nelsons' home the previous night. Appellant's confession was tape recorded and transcribed. The appellant reviewed the transcript of his confession and signed it, voluntarily. After the trial court conducted a hearing and determined that appellant's confession was, indeed, voluntary, Irvin was permitted to read it to the jury.

In appellant's statement, he admitted participating in the activities that resulted in the deaths of Willene and Carl Nelson. According to the appellant, although they never found any money, he and Giles went to the Nelsons' home to rob Carl Nelson. Giles had told the appellant that Carl Nelson had not sufficiently paid Giles for work Giles had done for Nelson in the past. Giles and the appellant had been drinking rum and beer prior to their trip to the Nelsons' home. They were both armed with .32 caliber pistols, but appellant's pistol would not fire at the Nelsons' home because he lost the firing pin. The appellant's statement confirmed the gruesome details of

-5-

the attack on the Nelson family.  He stated that by the time he entered the back bedroom, Giles had already shot and stabbed "everyone."  In his own words the appellant stated:

> "I goes off in the other room where he [Giles] at... shot and stabbed them all there, you know, the kids and... he looks at me and tells me, you know, that I had to do something and I told him that I didn't have a knife so he gave me one and I cut the mother and another man and cut the boy and that's all I did."

The appellant further stated that he used a butcher knife that Giles had, apparently, obtained from inside the Nelsons' home.  He also said that the "little girl" at one point begged him not to do it, and that the "woman" moved right before he stabbed her.  The appellant explained that when he stabbed the "woman" he "really was just so gone, I just closed my eyes" and stabbed wildly.

Jones v. State, 520 So. 2d 543, 545-546 (Ala. Crim. App. 1984),

aff'd 520 So. 2d 553 (Ala. 1988).

Petitioner appealed the 1982 conviction to the Alabama Court of Criminal Appeals, where he was represented by Boles.  He raised the following issues:

(1) Whether defendant was improperly denied a hearing on his request for change of venue;

(2) Whether the court erred in refusing to strike a juror who stated that she could not be sure that she would adhere to and vote her own conviction as to guilt or punishment if all other jurors voted differently; and

(3) Whether the court improperly admitted evidence of a prior conviction of a crime of violence through a certified copy of another county's Circuit Court docket sheet.

The Alabama Court of Criminal Appeals affirmed the conviction on January 10, 1984, after addressing the issues on the merits, but

remanded for a written sentencing order stating findings relating to mitigating circumstances.  Jones v. State, 520 So. 2d 543 (Ala. Crim. App. 1984).  Jones sought rehearing in the appellate court, which was denied on December 9, 1986.  Jones then sought *certiorari* in the Alabama Supreme Court, asserting:

> (1) that the trial court on remand refused to consider certain mitigating circumstances;

> (2) that the trial court erred in failing to strike the juror; and

> (3) that the evidence of prior convictions was improperly admitted.

The Alabama Supreme Court affirmed on January 8, 1988.  Ex parte Jones, 520 So. 2d 553 (Ala. 1988).  Jones sought rehearing, which was denied on February 12, 1988.  Petitioner sought *certiorari* review in the United States Supreme Court, asserting that:

> (1) the sentencing hearing placed the petitioner in the position that he was forced to waive either his constitutional right against self-incrimination or his right to confront witnesses against him; and

> (2) the court's instructions to the jury regarding the possibility of imposing a sentence other than death were unconstitutionally vague.

The Supreme Court denied *certiorari* on October 3, 1988. Jones v. Alabama, 488 U.S. 871, 109 S. Ct. 182, 102 L. Ed. 2d 151 (1988).

Petitioner filed a motion for post-conviction relief pursuant

to Temporary Rule 20[3] of the Alabama Rules of Criminal Procedure in

the trial court on or about March 6, 1990, alleging[4]:

(1) That he received ineffective assistance of counsel in that his attorneys at trial:

(a) failed to investigate his mental health problems, including intelligence levels and drug and alcohol abuse;

(b) failed to adequately investigate and research the racial composition of Blount County in that he was a black defendant charged with murders of white victims in a mostly white county;

(c) failed to seek and present evidence supporting a motion for change of venue;

(d) failed to conduct an adequate voir dire so as to identify biased jurors;

(e) failed to investigate and challenge the constitutional validity of a statement obtained from the defendant;

(f) failed to have transcribed several bench conferences relating to defendant's substantive rights;

(g) failed to investigate and adequately cross-examine state witnesses;

(h) failed to object to improper closing argument by the prosecution at both the guilt and penalty phase of the trial and to other prosecutorial "misconduct";

---

[3]    Temporary Rule 20 was the predecessor to the present Rule 32 of the Alabama Rules of Criminal Procedure.

[4]    The court has re-numbered petitioner's Rule 32 Claims to group them in a logical fashion.  References hereinafter are made to the court's re-numbered claims, rather than the numbering of the claims in the Rule 32 petition.

(i) failed to object to the court's improper burden-shifting instructions, discriminatory jury selection, hearsay evidence, and other improper and prejudicial testimony and/or argument;

(j) failed to adequately prepare for the penalty phase by failing to call witnesses and introduce evidence of mitigating circumstances;

(k) failed to defend against allegations of aggravating circumstances presented by the prosecution;

(l) failed to object to prejudicial and misleading comments made by the prosecutor to the jury during the penalty phase in that the prosecutor referred to the defendant as a "blood-thirsty savage," misstated the evidence, misstated the law regarding the death sentence, and made improper pleas in favor of the death penalty;

(m) failed to object to improper comments relating to the  victim impact statements and the worth of the victims;

(n) failed to present any evidence during the final sentencing hearing;

(o) failed to adequately challenge the under-representation of blacks, women, and other groups in the jury pool from which the grand and petit jurors were selected;

(p) failed to adequately prepare, investigate, or defend petitioner;

(q) failed to provide effective assistance on appeal by raising the issues presented in the post-conviction petition;

(2) he was denied a fair trial by the under-representation of blacks, women, and other groups from the jury pool from which the grand and petit jurors were selected;

(3) he was denied a fair trial by the prosecutor's improper use of peremptory challenges on the basis of race;

(4) he was denied a fair trial because his motion for change of venue was denied and the jury was biased by the pre-trial publicity in Blount County;

(5) the court erred in failing to adequately instruct the jury on the lesser included offenses of murder in the first degree and murder in the second degree;

(6) the court erred in giving an instruction on "intent" and "malice" that improperly shifted the burden to the defendant;

(7) he was denied a fair trial in that the prosecutor made improper, inflammatory, and prejudicial comments to the jury about the worth of the victim in closing arguments of both the guilt and penalty phases;

(8) the trial and appellate courts improperly refused to consider mitigating circumstances; and

(9) Alabama's death penalty is arbitrarily and discriminatorily applied on the basis of race in violation of the Eighth and Fourteenth Amendments.

On November 13, 1995, Jones amended the state court post-conviction petition to re-state and add the following claims:

(10) that he received in effective assistance of counsel at trial in that his attorneys:

(a) failed to offer testimony of any friends or family members who would have testified at the penalty phase as to mitigating circumstances;

(b) called only one witness, the defendant, during the penalty phase and then elicited only harmful testimony;

(c) failed to investigate defendant's mental history in order to prepare evidence that defendant was a "hapless follower" of the co-defendant;

-10-

(d) failed to attack the credibility of the confession made by the defendant by showing that he was prone to take responsibility for things he did not do;

(e) failed to present evidence at sentencing regarding Jones' history of child abuse and neglect;

(f) failed to offer evidence that Jones had been a productive citizen and a non-violent and helpful person during extended periods of his life;

(g) failed to present evidence that the victims already were dead when Jones inflicted any wounds;

(h) failed to present evidence refuting the appropriateness of the death penalty, including health and school records of the defendant;

(i) failed to argue to the jury that Jones cooperated with the police during the investigation;

(j) failed to elicit from Jones during the sentencing phase any testimony showing remorse for his actions;

(k) abandoned the defense of the defendant during the sentencing phase;

(l) failed to investigate the crime scene to find any exculpatory evidence relating to the wounds (as to whether victims were dead when stabbed by the defendant) and to the layout of the house, which may have cast doubt on the version of events presented by the prosecution witnesses;

(m) failed to develop and present a defense strategy relating to defendant's role as a mere "follower" of the co-defendant;

(n) failed to conduct a survey to demonstrate the prejudice caused by pre-trial publicity so as to support the motion for change of venue;

(o) failed to seek appropriate assistance of expert witnesses, such as psychologists, pathologist, and mental health professionals;

(p) failed to seek funds with which to retain a private investigator who could research the crimes of the co-defendant to show that defendant was a mere "follower";

(q) improperly requested funds for expert consultation in the presence of the prosecution; thereby revealing defense strategy before trial;

(r) appeared to concede defendant's guilt by failing to mount a vigorous presentation to show the jury that defendant did not kill the victims;

(s) failed to adequately support and pursue a motion for a change of venue;

(t) failed to seek to conduct voir dire of the jury venire on an individual basis instead of in groups of 10;

(u) failed to adequately investigate and research the racial composition of Blount County;

(v) failed to challenge the under-representation of blacks, women and other groups from the jury pool;

(w) failed to effectively conduct voir dire so as to identify jurors who were biased;

(x) failed to move for a jury instruction on the charge of manslaughter;

(y) failed to note for the record the race of venire members who were struck from the jury;

(z) improperly waived the right to a sequestered jury by withdrawing the motion for sequestration;

(aa) failed to object to the lack of a jury instruction on accomplice testimony and the distinction between murder and capital murder;

(bb) failed to object to improper and prejudicial jury verdict forms;

(cc) failed to preserve the record by failing to have bench conferences transcribed;

(dd) failed to adequately investigate and cross-examine state witnesses, including Tony Nelson, Brenda Nelson, Charlie Nelson, and the police officers who took defendant's confession;

(ee) failed to object to prosecutor's use of the phrase "blood-thirsty savage" and "blood-thirsty murderer" and to the prosecutor's improper comment about defendant's silence;

(ff) failed to object to the court's "burden-shifting" instructions given on the elements of "intent" and "malice";

(gg) failed to object to court's jury instruction that allowed finding of guilt without a finding of a particularized intent to kill;

(hh) failed to make the following motions:
   (i) for a directed verdict;
   (ii) for a new trial;
   (iii) for entire recordation;
   (iv) for a charge conference;
   (v) to view the crime scene; and
   (vi) to disclose all impeachment or exculpatory testimony;

(ii) failed to poll the jury members after the verdict at the guilt phase;

(jj) failed to prepare or defend against the evidence offered in the penalty phase relating to defendant's prior conviction for murder;

(kk) failed to function as an advocate during the penalty phase;

(ll) failed to present mitigating evidence showing the culpability of the co-defendant and his control over the defendant;

-13-

(mm) failed to argue to the jury at the penalty
phase that:
    (i) defendant was a victim of violence and
    neglect as a child;
    (ii) defendant suffered from mental problems
    and drug and alcohol dependency; and that
    (iii) defendant had been non-violent and
    helpful in the community;

(nn) failed to object to the admission of the
presentence investigation report, which included
hearsay and prejudicial statements;

(oo) failed to object to the use of electrocution
as a means of punishment in violation of the Eighth
and Fourteenth Amendments;

(pp) failed to object to prejudicial statements
made by the prosecutor to the jury, referring to
the defendant as a "blood-thirsty savage" and a
"blood-thirsty murderer";

(qq) failed to object to prosecutor's comments
on victim and family impact and the worth of
the victims;

(rr) failed to make use of any jury questionnaire;

(ss) prejudiced defendant by informing the court
that the State had offered a plea bargain;


(11) that he received ineffective assistance of counsel
on appeal in that his attorney:

(a) informed the trial judge that he agreed with
the trial court's rulings and saw no merit in any
appellate issue, then filed an inadequate and
ineffective brief, thereby waiving issues that
could have been appealed;

(b) failed to raise issues readily apparent on the
record, including the issues raised in the post-
conviction petition;


-14-

(c) failed to object to the absence of meaningful appellate review of death sentences imposed in Alabama;

(12) that he was denied effective assistance of counsel at trial and on appeal because of the State's inadequate compensation of defense attorneys in capital cases;

(13) that he was denied a fair trial by an impartial jury because the trial court failed to grant a change of venue;

(14) the trial court erred in failing to adequately instruct the jury on the distinction between capital murder and the other degrees of murder at both the guilt and penalty phases of the trial;

(15) the trial court erred in instructing the jury on "intent" and "malice" in that his instruction shifted the burden to the defendant and violated due process;

(16) the trial and appellate courts failed to consider mitigating evidence that was clear from the record;

(17) defendant was denied a fair appeal by the court's failure to transcribe all proceedings and to preserve and secure all physical evidence and trial exhibits;

(18) defendant was denied a fair trial and fair sentencing hearing in that the court refused to provide funds for expert assistance;

(19) the court erred by admitting into evidence over objection the statement of the defendant;

(20) the court erred in failing to hold a hearing concerning defendant's competency to stand trial;

(21) the court erred in admitting into evidence inflammatory and prejudicial photographs of the victims;

(22) the court erred in allowing the prosecutor to ask improper questions of witnesses and make inappropriate remarks to the jury;

(23) the court erred in allowing the prosecutor to make inappropriate argument at closings in both the guilt and penalty phases regarding the worth of the victims;

(24) the evidence was insufficient to show that defendant had the requisite intent to kill;

(25) the death sentence was unconstitutionally imposed on the basis of racial bias;

(26) Alabama's death penalty statute violates the Sixth, Eighth, and Fourteenth Amendments and the Alabama Constitution by failing to provide meaningful comparative review for those sentenced to death;

(27) electrocution as a means of punishment violates the Eighth Amendment; and

(28) newly discovered evidence entitles defendant to post-conviction relief.

The court held a two-day evidentiary hearing on the Rule 32 petition.  Jones filed a second amended Rule 32 petition on March 13, 1996, restating the claims previously asserted, and adding the following claims:

(29) that he was denied a fair trial in that a juror, J.D. Moss, failed to respond to a question about whether venire members knew any of the individuals, even though he did know  Sheriff J.C. Carr and one of the victims; and

(30) that juror Moss improperly influenced other jury members by telling them that the defendant would be released from jail in a short time unless the jury imposed the death penalty.

The Rule 32 petition was denied on June 10, 1996, in an opinion drafted by the state, finding that 14 of petitioner's claims were procedurally barred because he failed to raise them at trial or on direct appeal, and that petitioner failed to meet his

-16-

burden of proof as to the remaining claims of ineffective assistance of counsel, juror misconduct, and newly discovered evidence. Petitioner appealed the denial to the Alabama Court of Criminal Appeals, which affirmed by published opinion dated April 30, 1999. <u>Jones v. State</u>, 753 So. 2d 1174 (Ala. Crim. App. 1999). He sought rehearing, which was denied, and then sought *certiorari* in the Alabama Supreme Court, which was denied on December 17, 1999.

On December 15, 2000, the petitioner, represented by counsel, filed the instant petition for writ of *habeas corpus*, asserting:

> (A) That he was denied effective assistance of counsel at trial and sentencing in that:

>> (1) his attorneys failed to make a reasonable investigation into possible defenses and mitigation (Pet. ¶¶ 35-38);

>> (2) the State of Alabama provided insufficient funding for the compensation of capital defense attorneys (Pet. ¶¶ 39-40);

>> (3) his attorneys failed to present any mitigating evidence (including petitioner's mental health history, evidence of the crime itself, petitioner's childhood history, and petitioner's history of substance abuse) at the sentencing phase of his trial (Pet. ¶¶ 41-58);

>> (4) his attorneys at sentencing failed to object to admission into evidence of the pre-sentence report (Pet. ¶ 59);

>> (5) his attorneys failed to object to electrocution as a cruel and unusual means of punishment (Pet. ¶ 60);

-17-

(6) his attorneys at trial failed to object to misleading and prejudicial argument (including referring to the defendant as a "blood-thirsty savage" and a "blood-thirsty murderer") made by the prosecutor during the penalty phase (Pet. ¶ 61);

(7) his attorneys at sentencing failed to object to the prosecutor's improper comments relating to the victim and family member impact evidence (Pet. ¶ 62);

(8) his attorneys failed to adequately pursue a defense that the victims were already dead when the petitioner stabbed them (Pet. ¶¶ 64-69);

(9) his attorneys failed to object to the jury charge on accomplice liability (Pet. ¶¶ 70-76);

(10) his attorneys failed to request a jury charge on voluntary intoxication and manslaughter as a lesser-included offense (Pet. ¶¶ 77-81);

(11) his attorneys failed to object to the court's "burden-shifting" jury instruction on "malice" (Pet. ¶¶ 82-84);

(12) his attorneys failed to adequately seek and present evidence in support of a change of venue ((Pet. ¶ 85);

(13) his attorneys failed to adequately cross-examine state witnesses Tony Nelson, Charlie Nelson, Brenda Nelson, and the police officers who took petitioner's confession (Pet. ¶ 86);

(14) failed to object to improper comments by the prosecutor during closing arguments relating to petitioner's right not to testify (Pet. ¶¶ 87-88);

(B) That he received ineffective assistance of counsel on appeal in that his attorney on appeal raised meritless issues, while failing to raise all of the issues

-18-

presented in the instant habeas action as well as the following "substantial issues" on appeal:

>  (1) the omission of a jury charge on intoxication and the lesser included offense of manslaughter;

>  (2) the omission of a jury charge explaining the requisite intent;

>  (3) the court's error in giving an instruction that improperly shifted the burden to the defendant (Pet. ¶¶ 89-97);

(C) That the trial and appellate courts failed to consider non-statutory mitigating circumstances (Pet. ¶¶ 98-99);

(D) That the trial court erred in failing to hold a hearing in accordance with Alabama Code § 15-16-21 regarding petitioner's competency to stand trial, and in accepting a report approved by Dr. Seger, who was later fired for use of bogus credentials (Pet. ¶¶ 100-106);

(E) That there was insufficient evidence to support a finding that the defendant had the requisite intent to kill as required in a capital murder (Pet. ¶¶ 107-110);

(F) That the sentence was imposed as part of a pattern of racial bias (Pet. ¶¶ 111-114);

(G) That the appellate court's practice of limiting proportionality review to death penalty cases fails to ensure even-handed and nonarbitrary application of the death penalty (Pet. ¶¶ 115-119);

(H) That the method of execution used by the state constitutes cruel and unusual punishment (Pet. ¶¶ 120-124);

(I) That Juror Moss failed to disclose during *voir dire* that he knew the sheriff and deputies involved in the trial, knew the victims, and was familiar with the victims' home (Pet. ¶¶ 125-127); and

(J) That Juror Moss told other jurors that petitioner would be released from prison in a few years unless the jury imposed the death penalty (Pet. ¶¶ 128-129);

On March 22, 2001, respondent filed an answer to the petition, asserting that some of the claims were without merit, and that some of the claims were procedurally defaulted. By order of June 4, 2001, the parties were notified that the petition would be considered for summary disposition, and the petitioner was notified of the provisions and consequences of this procedure under Rule 8 of the Rules Governing § 2254 Cases. On June 26, 2001, the petitioner filed a response to the order regarding summary disposition. On August 1, 2001, petitioner filed a motion for evidentiary hearing, supported by authority, and a brief in response to the answer. On August 20, 2001, the respondent filed a response to the motion for evidentiary hearing.

## Ineffective Assistance of Counsel Claims

Petitioner advances fourteen specific claims of ineffective assistance by his trial attorneys, plus the general claim that his appellate counsel was ineffective for failing to raise on appeal each and every claim pled in the instant habeas petition together with three other "substantive" appeals issues. The state trial court conducted an evidentiary hearing that focused on many of these claims, which also were considered on appeal by the Alabama Court of Criminal Appeals. See Jones v. State, 753 So. 2d 1174 (Ala. Crim. App.), cert. denied, (Ala. 1999).

To the extent that certain claims of ineffective assistance of counsel were not pled in the Rule 32 petition and are raised here for the first time, they are procedurally defaulted and cannot be considered on their merits. Claims not presented to the state courts and raised here for the first time are treated as unexhausted claims. However, because the limitation period for asserting such claims under Rule 32.2(c) has now expired, no state remedy remains for addressing them. Consequently, such claims, in fact, are exhausted and procedurally defaulted. Collier v. Jones, 910 F.2d 770 (11th Cir. 1990).

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the petitioner can obtain federal habeas relief on claims resolved on the merits by the state courts only if he shows that the Alabama Court of Criminal Appeals' adjudication of the ineffective-assistance claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)and (2). See Wiggins v. Smith, 123 S. Ct. 2527, 2534, 156 L. Ed. 2d 471 (2003); Williams v. Taylor, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). This standard of review is strict, and federal courts are required

-21-

to give "greater deference to the determinations made by state courts than they were required to under the previous law." <u>Verser v. Nelson</u>, 980 F. Supp. 280, 283 (N.D. Ill. 1997)(quoting <u>Spreitzer v. Peters</u>, 114 F.3d 1435, 1441 (7th Cir. 1997)).

The state court determination of an issue will be sustained under § 2254(d)(1) unless it is "contrary" to clearly established, controlling Supreme Court law or is an "unreasonable application" of that law.   These are two different inquiries, not to be confused.   The Supreme Court has explained:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.   Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to*... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of*... clearly established Federal law, as determined by the Supreme Court of the United States." [Emphases added.]

<u>Williams v. Taylor</u>, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).   A state-court determination is "contrary" to clearly established Supreme Court law in either of two ways:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.   Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

Id. at 405.   Likewise, a state-court determination can be an

"unreasonable application" of clearly established Supreme Court law

in two ways:

> First, a state-court decision involves an unreasonable
> application of this Court's precedent if the state court
> identifies the correct governing legal rule from this
> Court's cases but unreasonably applies it to the facts of
> the particular state prisoner's case.   Second, a
> state-court decision also involves an unreasonable
> application of this Court's precedent if the state court
> either unreasonably extends a legal principle from our
> precedent to a new context where it should not apply or
> unreasonably refuses to extend that principle to a new
> context where it should apply.

Id. at 407; see Putman v. Head, 268 F.3d 1223 (11th Cir. 2001).

Whether the application is "reasonable" turns not on subjective

factors, but on whether it was "objectively unreasonable." See

Wiggins v. Smith, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003).

The question is not whether the state court "correctly" decided the

issue, but whether its determination was "reasonable," even if

incorrect. Id.

The Supreme Court's clearly established standard for assessing

claims of ineffective assistance of counsel is found in Strickland

v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674

(1984). Wiggins, supra, at 2535.   The United States Supreme Court

has established a national standard for judging the effectiveness

of criminal defense counsel under the Sixth Amendment.   "The

benchmark for judging any claim of ineffectiveness must be whether

counsel's conduct so undermined the proper functioning of the

-23-

adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland v. Washington</u>, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The Court elaborated:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

In order to show ineffectiveness of counsel, the movant must demonstrate that his attorney's performance fell below "an objective standard of reasonableness," 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. Also, in making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. The effectiveness or ineffectiveness must be evaluated by consideration of the totality of the circumstances. <u>Stanley v. Zant</u>, 697 F.2d 955, 962 (11th Cir. 1983). The court must

-24-

remember that a defendant in a criminal case has a constitutional right only to adequate counsel; he is not entitled to the very best legal representation. <u>Stone v. Dugger</u>, 837 F.2d 1477 (11th Cir. 1988).

The second requisite element in a claim of ineffective assistance of counsel is a showing of prejudice. Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice to the defendant. <u>See Strickland v. Washington</u>, <u>supra</u>. Prejudice means a reasonable probability that the outcome of the proceeding would have been different had the errors not occurred. "When evaluating this probability, 'a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.'" <u>Brownlee v. Haley</u>, 306 F.3d 1043, 1060 (11th Cir. 2002)(quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 695, 104 S. Ct. 2052, 2069, 80 L. Ed. 2d 674 (1984)). The court of appeals has explained:

> Significantly, although a petitioner must show that counsel's errors had more than "some conceivable effect on the outcome of the proceeding," the Supreme Court has said that a petitioner is *not* required to show that "counsel's deficient conduct more likely than not altered the outcome in the case." Rather, as the Supreme Court has held, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."

<u>Hall v. Head</u>, 310 F.3d 683, 694-695 (11th Cir. 2002)(quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.

-25-

2d 674 (1984)).  A "reasonable probability" is one that undermines
confidence in the outcome of the proceeding.   Nonetheless, the
court of appeals has stated that "The petitioner's burden of
demonstrating prejudice is high," Wellington v. Moore, 314 F.3d
1256, 1260 (11th Cir. 2002), and that "this standard is difficult
to meet." Brownlee v. Haley, 306 F.3d 1043, 1059 (11th Cir. 2002);
Johnson v. Alabama, 256 F.3d 1156, 1177 (11th Cir. 2001).   The
reason the burden is so difficult lies in the fact that errors are
made in every case, but it is only those errors that affect the
fundamental fairness of the proceeding that rise to the level of
prejudice under the ineffectiveness standard.   The Eleventh Circuit
stated, as follows:

> A finding of prejudice requires proof of "'unprofessional
> errors' so egregious 'that the trial was rendered unfair
> and the verdict rendered suspect.'" Eddmonds v. Peters,
> 93 F.3d 1307, 1313 (7th Cir. 1996)(quoting Kimmelman v.
> Morrison, 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91
> L.Ed.2d 305 (1986)).  As we recently explained, "habeas
> petitioners must affirmatively prove prejudice because
> '[a]ttorney errors come in an infinite variety and are as
> likely to be utterly harmless in a particular case as
> they are to be prejudicial.' '[T]hat the error had some
> conceivable effect on the outcome of the proceeding' is
> insufficient to show prejudice." Gilreath v. Head, 234
> F.3d 547, 551 (11th Cir. 2000) (quoting Strickland).

Johnson v. Alabama, 256 F.3d 1156, 1177 (11th Cir. 2001).  Moreover,
the court of appeals has cautioned:

> The petitioner bears the burden of proof on the
> "performance" prong as well as the "prejudice" prong of
> a Strickland claim, and both prongs must be proved to
> prevail. The Strickland test is not easily met; as we
> have said, "the cases in which habeas petitioners can

-26-

> properly prevail on the ground of ineffective assistance
> of counsel are 'few and far between.'" <u>Waters v. Thomas</u>,
> 46 F.3d 1506, 1511 (11th Cir. 1995)(en banc)(citation
> omitted).

<u>Johnson v. Alabama</u>, 256 F.3d 1156, 1176 (11th Cir. 2001).

Applying these standards, the court will examine each of petitioner's allegations of ineffective assistance of counsel.

I.   Habeas Claim A(1)   (Failure to Make Reasonable Investigation)-- Petitioner's first claim, found at paragraphs 35 through 38 of the petition, alleges in vague and conclusory terms that his trial attorneys failed to undertake a reasonable investigation into possible defenses and mitigation.  Without identifying any particular errors by counsel, this claim emphasizes the "cumulative" impact of all errors by counsel which are alleged as separate grounds for relief at other places in the petition.  In his August 1, 2001, brief in support of the petition, he argues that trial counsel failed to reasonably investigate the petitioner's mental health history, his abusive family history, and whether one or both of the victims were already dead when petitioner stabbed them. (<u>See</u> Court Doc. 22, pp. 15-17).  Citing <u>Williams v. Taylor</u>, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), he argues that the alleged failure of counsel to conduct a reasonable investigation into the crime and potential

mitigation evidence is *per se* prejudicial and ineffective assistance.

Petitioner alleged several versions of this claim in his Rule 32 petition.  At Rule 32 Claim 1(a), he asserted that counsel failed to adequately investigate his history of mental health and drug and alcohol problems.  <u>See also</u> Rule 32 Claims 10(c) and 10(o).  More generally, at Rule 32 Claim 1(p), he alleged that counsel failed to adequately prepare, investigate, and defend him at trial.  Additional claims pled in the Rule 32 petition focus on the failure of counsel to *present* (as distinct from investigate) evidence of mental health problems, drug and alcohol abuse, childhood neglect and abuse, and whether the victims were alive when he stabbed them.  <u>See</u> Rule 32 Claims 10(a), 10(e), 10(f), 10(h), 10(l), 10(dd), and 10(ll).

After a hearing, the Alabama state courts made findings of fact, both explicit and implicit in regards to the general allegation that counsel failed to conduct a reasonable investigation.  The Alabama Court of Criminal Appeals stated those findings as follows:

> The trial court found as follows with regard to this claim:
>
> > "Jack Davis participated in the first trial and was co-counsel to Mr. Roundtree.  Having participated in the prior trial, Davis was intimately acquainted with all the facts, circumstances, and evidence necessary to adequately represent Jones in 1982.  At trial

in 1982, Davis and Boles presented a reasonable, coherent defense of Jones. It is evident from the record that Jones denied any involvement in the murders. Instead, he claimed that he was present but did not inflict any knife wounds or gunshot wounds to the victims. The State's case depended upon the statements of the Nelson children who were surviving victims, and the confession of Jones. Boles aggressively attacked the witnesses' versions of events. Counsel impeached Brenda Nelson with prior inconsistent statements that she had made. In fact, counsel had admitted prior inconsistent statements over the objections of the State and prevented the State from admitting into evidence the entirety of her statements. Counsel also vigorously opposed the admission of Jones's confession during the hearing on their motion to suppress and during the testimony of the State's witnesses before the jury. Review of Mr. Davis's and Mr. Boles's examination of witnesses at trial confirms that both trial counsel were well prepared and were knowledgeable of all the facts and circumstances of the crime.

"Petitioner now, in [a] Rule 32 [petition], presents a different defense theory and strategy to this Court. That strategy and defense is that Jones was at the scene of the murder, was asked to enter the house after the co-defendant Giles had shot and stabbed the victims, and that Jones, at Giles's command, stabbed the victims. Although he stabbed the victims, petitioner now claims that evidence shows that Carl and Willene Nelson were deceased at the time he inflicted the wounds on their bodies; therefore, this is evidence of Jones's lack of intent to commit murder. The presentation of this new theory is no more than second-guessing trial counsel's performance after petitioner's conviction and adverse sentence when the defense at trial proved to be unsuccessful. This is the situation of which *Strickland* warned.

"Under the circumstances, and evaluating the
conduct of counsel and their perspective at
the time of the challenged conduct, it is
clear, based upon the first trial and the
statements of Jones during his sentencing in
the first case (CR 27, 28, 30, 31), that Jones
was denying that he inflicted any wounds
whatsoever on the victims.  It is clear from
his statements to the trial court concerning
his attorney that this was his plea and that
he was dissatisfied with his attorney, Mr.
Roundtree, for trying to present a mental
health defense.  The record also shows that
petitioner alleged that his confession was
only made because of promises made by the
sheriff's department concerning bond and that
the statement was not true but that he was
coerced into making it.  It would have been
unreasonable for counsel to argue before the
jury the alternative, contradictory theory
that petitioner now presents before this
Court.

"Under the circumstances that existed at the
time of trial, counsel could not have
presented the defense not offered, and
therefore was not ineffective for not
developing the strategy concerning the timing
of the fatal blows and the blows that
petitioner now argues that he did inflict.
Trial counsel had the benefit of hindsight
from the first trial in which to prepare and
try the 1982 case for petitioner.  This Court,
however, may not indulge in hindsight in its
scrutiny of trial counsel's conduct."
(C.R. 1044-46.)

 The trial court's findings, which are supported by the
record, indicate that it understood Jones's defense at
trial and that counsel, in light of their knowledge at
the time of trial, presented a vigorous defense.  As the
trial court correctly noted, Jones's counsel had the
benefit of Jones's 1979 trial, which led to a conviction
and the imposition of a sentence of death, to assist in
determining an appropriate defense to the evidence.
Davis, one of Jones's counsel in the 1982 trial,
represented Jones in the 1979 trial;  therefore, he had

-30-

knowledge of what defense tactics were effective based on
the state's evidence, and what defenses, especially the
one of nonparticipation raised in the 1979 trial, were
not.

Jones v. State, 753 So. 2d 1174, 1183-84 (Ala. Crim. App.), cert.

denied, (Ala. 1999).   Further, on particular claims that counsel

failed to investigate certain types of evidence, the Court of

Criminal Appeals stated:

> With regard to this claim, the trial court entered the
> following findings of fact:
>
> * * *
>
>> "The record reflects that counsel for
>> petitioner investigated and pursued a mental
>> health defense for the first trial.
>> Petitioner had been evaluated by the Lunacy
>> Commission.   Previous counsel, during the
>> first trial, had filed appropriate motions for
>> mental evaluations and had conducted
>> depositions of the mental health experts who
>> evaluated petitioner.   The trial court
>> subsequently denied the motion for private
>> psychiatric examination and testing and funds
>> for an expert witness in the field of mental
>> health to perform intelligence and personality
>> tests on the petitioner.   (C.R. 204-205).
>> Thereafter, petitioner was granted his right
>> to refile his motion for psychiatric
>> examination and said motion was granted.
>> (C.R. 106).
>>
>> "Subsequently, in preparation for the second
>> trial, Jack Davis filed a motion for expert
>> witnesses including mental health experts and
>> filed a motion for private psychiatric
>> examination and testing. (CR. 204-205).   That
>> was denied by the Court on December 7, 1982.
>> (CR. 205).   This Court finds that counsel in
>> the 1982 trial filed the appropriate motions
>> requesting mental health experts and the
>> appropriate evaluations and tests to be

performed upon petitioner and was denied
relief by the Court."

\* \* \*

The record supports the trial court's findings.

Jones v. State, 753 So. 2d 1174, 1192-1194 (Ala. Crim. App.), cert.

denied, (Ala. 1999). In resolving similar claims in the Rule 32

proceedings, the Alabama Court of Criminal Appeals concluded the

following:

> Jones contends that his trial counsel rendered
> ineffective assistance during the sentencing phase of his
> trial because, he says, his counsel failed to investigate
> and to present available mitigating evidence.
> Specifically, he maintains that his trial counsel could
> have provided testimony concerning his mental health,
> evidence that he did not deliver the fatal blows to the
> victims, and testimony from family members and friends
> about his background that would have been useful as
> mitigation. At Jones's trial the only evidence presented
> by the defense during the sentencing phase was Jones's
> testimony in his own behalf about a prior conviction.
>
> While counsel has a duty to investigate in an attempt to
> locate evidence favorable to the defendant, "this duty
> only requires a *reasonable* investigation." *Singleton v.
> Thigpen,* 847 F.2d 668, 669 (11th Cir. 1988), cert.
> denied, 488 U.S. 1019, 109 S.Ct. 822, 102 L.Ed. 2d 812
> (1989) (emphasis added). See *Strickland,* 466 U.S. at
> 691, 104 S.Ct. at 2066; *Morrison v. State,* 551 So. 2d
> 435 (Ala.Cr.App.1989), cert. denied, 495 U.S. 911, 110
> S.Ct. 1938, 109 L.Ed. 2d 301 (1990). Counsel's
> obligation is to conduct a "substantial investigation
> into each of the *plausible* lines of defense."
> *Strickland,* 466 U.S. at 681, 104 S.Ct. at 2061 (emphasis
> added). "A substantial investigation is just what the
> term implies; it does not demand that counsel discover
> every shred of evidence but that a reasonable inquiry
> into all plausible defenses be made." *Id.,* 466 U.S. at
> 686, 104 S.Ct. at 2063.

-32-

> "The reasonableness of counsel's actions may be
> determined or substantially influenced by the defendant's
> own statements or actions. Counsel's actions are usually
> based, quite properly, on informed strategic choices made
> by the defendant and on information supplied by the
> defendant.  In particular, what investigation decisions
> are reasonable depends critically on such information."

> *Id.,* 466 U.S. at 691, 104 S.Ct. at 2066.

Jones v. State, 753 So. 2d 1174, 1191 (Ala. Crim. App.), cert.

denied, (Ala. 1999).  Thereafter, analyzing several claims that

counsel failed to present (as distinct from investigate) specific

types of mitigation evidence, the Court of Criminal Appeals

concluded that counsel conducted a reasonable investigation and

were not ineffective.  It wrote:

> Moreover, because we have determined that evidence of
> Jones's alleged mental illness, the forensic evidence,
> and the testimony of family and friends would not have
> established a mitigating circumstance, we cannot hold
> that Jones's trial counsel was ineffective for failing to
> present this evidence.  We note that there is nothing in
> the record to suggest that Jones's trial counsel ignored
> matters that should reasonably have alerted them to
> Jones's mental health or to the value of contacting
> persons who might have information about Jones's
> background that might aid in his defense. See *Cochran v.
> State,* 548 So.2d 1062 (Ala.Cr.App.), cert. denied, 493
> U.S. 900, 110 S.Ct. 259, 107 L.Ed. 2d 208 (1989).  Jones
> has not proven by a preponderance of the evidence that
> his attorneys were ineffective because they failed to
> investigate and present possible mitigating evidence.
> *Fortenberry,* 659 So.2d at 200.  "In a challenge to the
> imposition of a death sentence, the prejudice prong of
> the *Strickland* inquiry focuses on whether 'the sentencer
> ... would have concluded that the balance of aggravating
> and mitigating circumstances did not warrant death.'"
> *Stevens v. Zant,* 968 F.2d 1076, 1081 (11th Cir. 1992),
> cert. denied, 507 U.S. 929, 113 S.Ct. 1306, 122 L.Ed. 2d
> 695 (1993), quoted in *Daniels,* 650 So. 2d at 568.  Jones
> has not established a reasonable probability that but for

his counsel's failure to call these witnesses and present the alleged mitigating evidence during the sentencing phase of his trial that the outcome of the sentencing proceeding would have been different.

> "Further, we cannot say that the appellant suffered any prejudice based on counsel's performance because he failed to demonstrate any evidence of mitigation.  Prejudice cannot merely be alleged;  it must be affirmatively proved.  *Duren v. State,* 590 So. 2d 360 (Ala.Cr.App. 1990).  Thus, the appellant has not shown that there is a reasonable probability that the outcome of this trial would have been different, but for trial counsel's performance.  *Baldwin [v. State,* 539 So. 2d 1103 (Ala.Crim.App. 1988)], *Thompson v. State,* 581 So. 2d 1216 (Ala.Cr.App. 1991), cert. denied, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed. 2d 774 (1992)."

*Brooks v. State,* 695 So. 2d 176, 182 (Ala.Cr.App. 1996), aff'd, 695 So. 2d 184 (Ala. 1997), cert. denied, 522 U.S. 893, 118 S.Ct. 233, 139 L.Ed. 2d 164 (1997).  See also *Waters v. Thomas,* 46 F.3d 1506, 1511 (11th Cir.), cert. denied, 516 U.S. 856, 116 S.Ct. 160, 133 L.Ed. 2d 103 (1995)("our decisions teach that whether counsel's performance is constitutionally deficient depends upon the totality of the circumstances viewed through a lens shaped by the rules and presumptions set down in *Strickland v. Washington,* and its progeny"); and *Singleton,* supra (petitioner made no showing of prejudice resulting from alleged inadequate investigation by trial counsel where petitioner failed to proffer the type of mitigating evidence that would have changed outcome of trial had trial counsel conducted further investigation). Because Jones has not shown that any additional evidence would have changed the trial court's decision regarding sentencing, we agree with the trial court's ruling that trial counsel did not render ineffective assistance with regard to the investigation and presentation of mitigating evidence during the sentencing phase of Jones's trial.  *Davis v. State,* 720 So. 2d 1006 (Ala.Cr.App. 1998), cert. denied, 525 U.S. 1149, 119 S.Ct. 1049, 143 L.Ed. 2d 55 (1999).

Jones v. State, 753 So. 2d 1174, 1197 (Ala. Crim. App.), cert. denied, (Ala. 1999).

These findings and conclusions are entitled to a presumption of correctness under 28 U.S.C. § 2254. See 28 U.S.C. § 2254(d) &(e)(1).  Nowhere has petitioner attempted to show that these findings and conclusions are contrary to or an unreasonable application of binding Supreme Court precedent.  Indeed, the conclusions reached by the state courts appear to be based precisely on the Strickland standard and, thus, are certainly not "contrary" to Supreme Court precedent.

These conclusions also are not an "unreasonable application" of Strickland.  In essence, the state courts found that counsel conducted a reasonable investigation under the circumstances known to them at the time of the 1982 trial.[5]  They looked into and were

_____

[5]    An important consideration to keep in mind when assessing the fact-finding by the state courts is the allocation of the burden of proof.   It is the petitioner's burden to prove his allegations by a preponderance of the evidence, and to the extent that the *absence* of evidence affects the fact-finding process, the burden of that absence falls on the petitioner.   In this case, for instance, co-counsel Jack Davis, who represented petitioner at both his 1979 and 1982 trials, died before the 1996 Rule 32 hearing. The extent to which he could have elucidated the investigation he conducted for the defense will never be known.  The absence of this testimony, however, implicates the burden of proof the petitioner must bear, not any that respondents must carry.   Stated another way, the petitioner must prove that Davis and other co-counsel *failed* to conduct a reasonable investigation of his defenses and any mitigation that might be presented during the penalty phase. The burden is not on the respondents to prove that a reasonable investigation did occur.  Insofar as Davis's death prevents proving what he did or did not do, the lack of evidence falls on the

aware of petitioner's mental health history and, in fact, initially attempted to mount a "mental health defense" at the 1979 trial, to which petitioner expressed dissatisfaction.  The record supports the finding that petitioner's mental status was the subject of evaluation at Bryce Hospital in 1979, during which two doctors opined that petitioner was not psychotic and was competent to stand trial.  Implicit in the finding made by the state courts that Mr. Roundtree (with co-counsel, Mr. Davis) sought to present a mental health defense at the 1979 trial is the conclusion that some investigation of petitioner's mental health history took place. While counsel was aware of petitioner's drug use and its degradation of his mental state, no true psychological data existed in 1982 suggesting that petitioner suffered from a serious mental illness.  There is little, if any, evidence that petitioner's 1982 behavior or demeanor suggested a mental problem.  Counsel's motion for funds to hire a defense psychiatrist was denied, thus leaving counsel with no other source of psychological data but the 1979

───────────────────

petitioner because he bears the burden of proving his allegations. The fact-finding courts will not presume, simply because Davis is unavailable to testify concerning whatever investigation he might have conducted, that his investigation was constitutionally inadequate.  Petitioner makes much of the fact that co-counsel George Boles admitted that he conducted little or no investigation, but it must be remembered that Boles was appointed to represent petitioner in 1982 *only days before trial began*.  Prior to that time, Davis had been representing petitioner since 1979.  Thus, it is not surprising that Davis, not Boles, would have conducted the pretrial investigation of the case and that Boles was unable to describe it later at the Rule 32 hearing.

evaluation. Because that data presented nothing that could be used effectively for defense or mitigation, the failure to further investigate it (or present it) was not ineffective assistance.[6]

Given that some investigation took place that Mr. Davis was aware of and given that petitioner opposed a mental health defense, it was not unreasonable for counsel to focus their investigative efforts elsewhere at the time of the 1982 trial. That petitioner was able to offer an expert at the 1996 Rule 32 hearing, raising questions about the petitioner's mental state, does not indicate that counsel's investigation of it in 1979 and 1982 was constitutionally inadequate. Much of the evidence relied upon by petitioner's expert witness in 1996 consisted of petitioner's treatment during his prison incarceration, long *after* the 1982 trial, evidence that did not exist and could not have been discovered by counsel in 1982.[7]

---

[6]    Boles considered the insanity defense, but decided not to use it because implied in that defense is the fact that petitioner committed the crime. (R. 32 at 252-53).

[7]    At petitioner's Rule 32 hearing, Willie Woods, a family friend, testified that petitioner was just like a normal kid and had good work habits. (R. 32 at 252-53). Additionally, petitioner's uncle testified that petitioner had good examples in his life and that he followed people who were good examples. (R. 32 at 242-45). When asked whether it would be fair to say petitioner had a rough life coming up, he testified "I imagine he did in his early childhood, yes." (R. 32 at 243). Further, the uncle testified that petitioner was only twice moved from one place to another. Id. When asked specifically about whether the source of petitioner's problems was "following those people that are the bad examples instead of following the ones that are the good examples,"

The state appellate court's conclusion that counsel's investigation of petitioner's mental state in 1982 was not constitutionally ineffective assistance is neither contrary to nor an unreasonable application of Supreme Court precedent. Consequently, it is entitled to a presumption of correctness and deference under § 2254(d).

Likewise, the state courts concluded that counsel were not ineffective for failing to investigate more thoroughly the assertion that the victims were dead when petitioner stabbed them. The courts pointed out that petitioner staunchly denied any participation in the actual killings until he filed the Rule 32 petition. Counsel were not ineffective for advocating the position taken by petitioner that, although present, he was not involved in the killings. Given petitioner's primary defense at trial, counsel certainly were not ineffective for declining or failing to advance the contradictory argument that petitioner *did* stab the victims, but they were already dead. Such an alternative defense would have undermined the primary defense. Because it was not reasonable for counsel to attempt to present alternative, but contradictory defenses, it also was not unreasonable for counsel not to waste

---

the uncle testified: "I don't think so.   It was just at that particular time that he was with the group that decided to get into trouble." Id. at 246.   Both of these witnesses who had the opportunity to observe petitioner testified regarding petitioner's personality prior to the murder, and contradict evidence relied on by petitioner's expert witness in 1996.

defense time and resources on *investigating* the defense. Petitioner presented counsel with his defense that he did not participate in the actual killings; counsel was not free to disregard that defense, and it would have been unreasonable for counsel to seek to present another defense that essentially put the lie to the defendant's position. Given defendant's position and the unavailability of the alternative defense, it was not unreasonable for counsel to forego additional investigation of it.

Additionally, the forensic evidence presented by the State, as well as the testimony of the surviving victims, left little room for the defense to argue that the murder victims were already dead when petitioner stabbed them. At the time of trial, the forensic report of Dr. Embry indicated that the stab wounds to the victims were pre-mortem. Another witness testified that the victims were moaning as petitioner stabbed them, and even in his confession, petitioner stated that the "woman" moved just before he stabbed her. In light of this evidence, it was not unreasonable for counsel to forego further investigation of the position that the victims were, in fact, dead when petitioner stabbed them.

But even if it is true that the victims were dead when petitioner stabbed them, that is neither a defense to the capital charge nor sufficiently mitigating to fault counsel for failing to further investigate it. The clear evidence was that petitioner, armed with a gun, accompanied co-defendant Giles, also armed with

a gun, to the victims' home for the purpose of robbing them, where Giles shot and stabbed the victims and other members of their family.   Petitioner then came into the house and, at Giles' direction, stabbed the victims several times.   Even assuming that the victims were already dead when petitioner stabbed them, his active presence and assistance to Giles aided and abetted Giles' actual killing of the victims while petitioner himself possessed an intent that deadly force be used against them.   Plainly, even if the victims were killed by Giles and petitioner's blows were not the direct cause of death, his participation in Giles' actions made him equally culpable.   The evidence sufficiently supported the conclusions that petitioner both actively aided and assisted Giles and that he possessed the requisite intent that deadly force be used against the victims.   He and Giles both took handguns to the scene for the purpose of robbing the victims.   Clearly, the possibility that deadly force would be used was known to and accepted by petitioner from the beginning.   Thus, even assuming his current position to be correct, he is nonetheless guilty of capital murder as an aider and abetter.

Furthermore, that the victims might have been dead when petitioner stabbed them was not mitigating evidence for sentencing purposes.   There is no evidence that, when he stabbed them, petitioner knew they were already dead; indeed, he admitted in his confession that the "woman" moved as he stabbed her, indicating

-40-

that he *believed* she was alive.  He exhibited a willingness and intent to kill, which hardly seems like mitigation.

Consequently, even if counsel had more thoroughly investigated the forensic question whether the victims were already dead, it is unlikely that such fact would have constituted either a defense to the crime or mitigation for sentencing purposes.  This court, therefore, agrees with the Alabama Court of Criminal Appeals that counsel were not ineffective for failing to invest more time and effort in investigating this evidence.  Again, the conclusion by the state courts that counsel were not ineffective for failing to investigate the forensic issue of the death of the victims is supported by the evidence and is neither contrary to nor an unreasonable application of Supreme Court precedent.

Petitioner also contends that counsel were ineffective in their investigation of evidence of his drug abuse and his abusive childhood.  The state courts concluded that because neither of these areas of evidence would be fruitful, either as a defense or as sentencing mitigation, it was not unreasonable for counsel not to expend time and effort investigating them at the time of the 1982 trial.  Evidence of petitioner's drug use was presented to the jury during the guilt phase of the 1982 trial.  There was testimony that Giles and petitioner had been drinking and using drugs prior to the crime.  Witnesses testified that they appeared drunk and petitioner admitted in his confession that he was "so far gone"

-41-

that he stabbed wildly.  This evidence did not lead to a better outcome for petitioner, and there is no reason to believe the jury failed to consider it for whatever mitigating power it had during the sentencing phase.  The courts have noted that evidence of drug and alcohol abuse "often has little mitigating value and can do as much or more harm than good in the eyes of the jury." Crawford v. Head, 311 F.3d 1288, 1321 (11th Cir. 2002); see also Haliburton v. Secretary for the Dep't of Corr., 342 F.3d 1233 (11th Cir. 2003). Because of the double-edged sword such evidence presents, counsel is given great deference in the decision whether or not to resort to it.

Similarly, the state-court conclusion that counsel cannot be faulted for failing to further investigate petitioner's family background is not an objectively unreasonable application of Strickland.  No evidence was presented at the Rule 32 hearing suggesting that petitioner ever mentioned his abusive childhood to counsel, while Boles testified that, at the time of the 1982 trial, there was an "estrangement" between petitioner and his family. Despite that estrangement, counsel was in contact with petitioner's uncle, who revealed nothing to them about childhood abuse of the petitioner.  Indeed, the only Rule 32 witness actually able to describe petitioner's abusive childhood was his sister, Glen Jones. Ms. Jones had been presented as a witness at the 1979 trial and counsel felt she made a poor impression on the jury because of her

-42-

admitted drug use around her children.  Therefore, counsel was reluctant to use her again.  Given these obstacles, this court agrees with the Alabama Court of Criminal Appeals that counsel were not ineffective because they decided to focus their investigative efforts elsewhere.

It was not unreasonable for counsel to put less emphasis on the investigation of this evidence in favor of other potential mitigation evidence that was less likely to strike a controversial note with the jury.[8]  The state court conclusion that counsel was not constitutionally ineffective because they did not pursue these lines of investigation is not contrary to or an unreasonable application of <u>Strickland</u> and, thus, is entitled to deference.  In summary, petitioner is entitled to no habeas relief on the claim that he received ineffective assistance of counsel due to their failure to investigate other defenses and mitigation.

II.  <u>Habeas Claim A(2)</u> (Insufficient Funding)-- Petitioner's Habeas Claim A(2) alleges that counsel's representation was constitutionally ineffective because the State of Alabama grossly under-funds the representation of capital defendants, hamstringing counsel's ability to represent adequately their clients.  <u>See</u>

---

[8]  In this case, counsel's mitigation theory advanced two arguments:  first, lingering reasonable doubt about whether petitioner was involved in the actual killings and, second, that he was a weak follower who was bossed around by co-defendant Giles.

Petition, ¶¶ 39-40.  It appears that, although the claim was raised
in the Rule 32 petition, it was not asserted on appeal from denial
of Rule 32 relief.  A careful review of the petitioner's brief on
appeal from denial of Rule 32 relief (Tab R-42) and the opinion of
the Alabama Court of Criminal Appeals (Tab R-53) both fail to
reveal any form of this particular claim being argued.  Failure tc
assert a claim on appeal from denial of collateral relief is a
waiver and procedural default of the claim.  Esslinger v.
Davis, 44 F.3d 1515 (11th Cir. 1995).  Petitioner has shown no
cause and prejudice to excuse the default, nor has he made a
colorable showing of factual innocence to come within the
"fundamental miscarriage of justice" exception to procedural
default.  Consequently, this claim is due to be denied as
procedurally defaulted.

But even if not procedurally defaulted, it fails to state a
claim for habeas relief.  Under the Strickland standard, a
petitioner alleging ineffective assistance of counsel must identify
particular errors or deficiencies in counsel's representation,
proving how those errors and deficiencies caused actual prejudice
to the defense.  Here, petitioner has made no attempt to link
particular errors, deficiencies, or problems with his defense to a
lack of funding for counsel.  Even though one might assume that the
limitation of funding for counsel in capital cases causes real
problems, an assumption is not enough to prove a constitutional

-44-

violation.  Petitioner must allege and show that some specific
shortcoming in counsel's representation of him was directly
attributable to a lack of funding.  That has not been done in this
case.  Given the strong presumption of competence afforded counsel
under Strickland, the court cannot simply assume that inadequate
defense funding actually produced a constitutionally ineffective
performance by counsel.  The issue is not what counsel could have
done if they were given unlimited money; rather, it is whether the
limitation on funds sank their representation below a
constitutional minimum.  Aside from the general complaint that
funding was inadequate, there is no attempt by petitioner to show
how the inadequate funding produced an ineffective performance by
counsel.  No relief is warranted on this claim.

    III.  Habeas Claim A(3) (Failure to Present Mitigating
Evidence)-- At paragraphs 41 through 58 of the habeas petition,
petitioner pleads his most extensive claim of ineffective
assistance.  He alleges that counsel were ineffective during the
penalty phase of trial because they failed to present any
mitigating evidence, in particular, evidence of his mental health
history, evidence that petitioner did not kill the victims because
they were already dead when he stabbed them, evidence of his
abusive childhood, and evidence of the history and effect of his
substance abuse.  This claim is similar to habeas claim A(1), which

focused on counsel's alleged failure to adequately investigate and discover evidence relating to these mitigation theories.

In resolving this claim during the Rule 32 proceedings, the Alabama Court of Criminal Appeals held generally that the evidence relating to these factors was too weak for any of them to have any significant mitigating effect on the sentence and, consequently, counsel's failure to present the evidence was not prejudicial for purposes of the Strickland standard of ineffective assistance. With respect to the petitioner's mental health, the Court of Criminal Appeals reviewed the extensive testimony presented at the Rule 32 hearing, and reached the same conclusion as the trial court, that the evidence of mental illness was too weak to have any mitigating effect.  The court wrote:

> We agree with the trial court that the evidence presented by Jones in support of this claim, including the testimony of Dr. Fisher and the depositions and affidavit of other expert witnesses, was not adequate evidence of a mitigating circumstance and was refuted by other testimony and evidence admitted at the hearing and at trial.  It is particularly significant that although Jones was provided with the opportunity and was even transported to a proper facility to be tested to determine an organic basis for the alleged mental health problems before his Rule 32 hearing, he admitted no test results but relied solely on opinion evidence to establish his alleged mental health problems. Additionally, we find significant the finding of the Lunacy Commission, which conducted an evaluation before Jones's [1979] trial that was relied upon heavily by his Rule 32 witnesses, that Jones was not suffering from a mental illness at the time of the acts charged that would have prevented him from distinguishing right from wrong or that would have prevented him from adhering to what was right.  In this situation, the trial court made

-46-

> certain credibility determinations which are within its
> discretion. *Brownlee v. State,* 666 So. 2d 91
> (Ala.Cr.App. 1995). We concur with the trial court's
> finding that Jones has failed to establish concrete
> evidence to support the suggestion that he was under
> extreme mental and emotional stress during the murders.
> See § 13A-5-51, Ala.Code 1975. Consequently, Jones has
> failed to meet his burden of proof to establish a claim
> of relief in this regard. See Rule 32.3, Ala.R.Crim.P.

<u>Jones v. State</u>, 753 So. 2d 1174, 1194-1195 (Ala. Crim. App.), <u>cert.</u>

<u>denied</u>, (Ala. 1999).

Similarly, the court rejected the argument that petitioner's

sentence could have been mitigated by evidence that the victims

were already dead when he stabbed them. The court recounted the

evidence presented by both sides and concluded that the State's

forensic evidence of death was more credible than the petitioner's.

The Court of Criminal Appeals held:

> We find no abuse of discretion in the trial court's
> finding that Dr. Embry's testimony was more credible than
> Dr. Frist's, and its subsequent finding that Dr. Frist's
> testimony would not have been considered mitigating by
> the jury or by the court. *Brownlee,* supra.
> Additionally, we concur with the trial court's
> observation that "this crime was so savage and brutal
> that participation in any way by the petitioner would
> have weighed conclusively against mitigating his
> involvement on the basis of who was the particular
> individual who delivered the fatal blows to the victims."
> (C.R. 1058.) Therefore, we find no error in the trial
> court's determination that no mitigating circumstance
> existed in this regard.

<u>Jones v. State</u>, 753 So. 2d 1174, 1196 (Ala. Crim. App.), <u>cert.</u>

<u>denied</u>, (Ala. 1999).

Finally, the appeals court agreed with the Rule 32 court that the evidence of petitioner's abusive childhood was not strong enough to create a mitigating factor that should have been considered during sentencing. The court said:

> We have reviewed the testimony of Jones's family members and friends; none of their testimony supported a finding of a mitigating circumstance recognized by § 13A-5-51, Ala.Code 1975, and would not have changed the balance of the mitigating and aggravating circumstances in Jones's case. Therefore, we find no error in the trial court's determination that the evidence would not have changed the outcome of Jones's trial.

Id. at 1196-1197. Based on these findings, that the evidence simply did not have a strong enough mitigating impact to warrant a conclusion that the outcome of the sentencing phase would have been different if counsel had presented it, the Alabama Court of Criminal Appeals rejected the argument that counsel were ineffective during the sentencing phase of the trial.

As previously discussed, the resolution of this issue reached by the Alabama courts is entitled to a presumption of correctness and deference, unless it is contrary to or an unreasonable application of Supreme Court precedent. For the reasons addressed above under habeas claim A(1), the conclusions reached by the Court of Criminal Appeals were not contrary to or an unreasonable application of Supreme Court precedent. This court's own review of the record persuades it that the state courts' assessment of the evidence and the conclusions drawn from it are essentially correct

-48-

and reasonable.  For instance, the mental health evidence available to counsel in 1982 consisted of the evaluation done at Bryce Hospital in 1979, which found no mental illness or defect that affected petitioner's ability to conform his conduct to the law. Much of the evidentiary basis for petitioner's current claim of mental illness arose *after* his trial, during his imprisonment. Certainly, it was not objectively unreasonable for the state courts to discount this evidence that did not exist at the time the trial occurred.

Insofar as petitioner criticizes counsel's failure to present evidence of his history of drug abuse as a mitigating factor, the state courts again concluded that it lacked sufficient mitigating power to undermine confidence in the outcome of the sentencing proceeding.  Evidence of petitioner's drug use was, in fact, presented to the jury during the guilt phase of trial and was surely considered by them during the penalty phase.  Counsel used the circumstances of the crime, including petitioner's drug intoxication, to argue that petitioner was coerced by Giles, was a "follower, " and less culpable than Giles.  To the extent that any mitigation could have been drawn from these particular circumstances, counsel did so.

Similarly, the court agrees that forensic evidence raising questions about whether the victims were already dead when stabbed by petitioner also lacks any significant mitigating impact.  As

-49-

discussed above under habeas claim A(1), the evidence that the victims were already dead when petitioner stabbed them is very weak and contradicted by forensic evidence, the testimony of surviving victims, and petitioner's own confession.  But even if accepted as true, petitioner's presence as an accomplice of Giles far outweighs the mitigation argument that he only stabbed dead bodies.  He was present and aided and abetted Giles' brutal murder of the victims, even if he did not inflict a fatal blow himself.  The state courts' resolution of this issue that counsel were not ineffective in failing to present this mitigation argument is entitled to deference.

The court also cannot say that the state-court assessment of the evidence relating to petitioner's difficult childhood is objectively unreasonable.  Even if this court were to view that evidence more sympathetically to the petitioner, it cannot be said that the state courts' determination that it was not sufficiently mitigating to undermine confidence in the sentencing decision is objectively unreasonable.  Although petitioner's sister described appalling abuse at the hands of their father, other family members could add only that petitioner was separated from his mother at an early age and that he lived with various relatives during his childhood.  Counsel's experience with petitioner's sister as a witness at the 1979 trial made them hesitant to use her again, due to her own drug abuse.  Other contradictory evidence indicated that

-50-

he finished high school, performed reasonably well in school, and was well liked by family and friends.  Even if this evidence had been fully presented to the court and jury during the sentencing phase, it is at least debatable, and therefore, objectively reasonable, that it would not have swayed the sentencing decisions.

Evidence of childhood abuse, like that of drug and alcohol abuse, often can be a double-edged sword, perhaps doing good or perhaps doing harm.  For example, in <u>Haliburton v. Secretary for the Dep't of Corr.</u>, 342 F.3d 1233 (11th Cir. 2003), the court of appeals quoted the testimony of an attorney on the difficulty of the decision to present such evidence:

> At the state evidentiary hearing, Bailey testified that he chose not to present evidence about Haliburton's abusive background in part because such evidence "can paint an appealing picture of how your client was abused and all those factors lead up to him doing what [he] did and you may convince the jury of that absolutely; but you may also convince them that, paint a picture of Frankenstein."

342 F.3d at 1244, n.30.  Although <u>Haliburton</u> is a different case, involving a different petitioner, the difficulty of deciding whether to present childhood-abuse evidence remains the same.  The effect such evidence might have on the jury cannot be said to be universally favorable.  That being the case, the court cannot simply assume that if counsel had presented such evidence, it would have had a mitigating effect; it might have had just the opposite effect.  Thus, whether "correct" or not, the conclusion by the

state courts that it would not have had a significant mitigating
effect cannot be said to be objectively unreasonable.  The issue is
not whether this court might view the mitigating impact of this
evidence differently, or even whether the state courts' conclusions
are "correct."  Rather, under § 2254(d) and <u>Williams</u>, the question
is whether those conclusions are objectively unreasonable.  Because
they are not, they are entitled to deference, and habeas relief is
not warranted.


    IV.  <u>Habeas Claim A(4)</u> (Failure to Object to Admission into
Evidence of Presentence Report)--Petitioner contends that he
received ineffective assistance of counsel during the sentencing
phase of his trial because counsel failed to object to the
admission into evidence (and subsequent consideration by the jury)
of the presentence report prepared at the time of the 1979 trial.
At paragraph 59 of the petition, he alleges:

> Trial counsel failed to object to the admission into
> evidence of a prejudicial presentence investigation
> report which included inadmissible hearsay, the fruits of
> an uncounseled interview with Mr. Jones, a recounting of
> the effects of the crime on the victims' family, previous
> arrests, the personal commentary of the author and failed
> to include such relevant information as Mr. Jones' abuse
> as a child, history of drug and alcohol dependency and
> mental deficiencies.

Petitioner presented this exact claim in his Second Amended Rule 32
petition as claim II.A.4.nn. (<u>See</u> Second Amended Rule 32 petition,
p. 14).  On appeal from denial of Rule 32 relief, the Alabama Court

of Criminal Appeals concluded petitioner failed to offer any proof
of this claim during the Rule 32 hearing to establish either that
it was true or that it prejudiced the defense.  About this claim
(and others), the court wrote:

> Jones claims that his trial counsel provided ineffective
> assistance of counsel during the guilt phase and the
> sentencing phase of his trial.  He alleges the following
> as instances of ineffective assistance of counsel:
>
>              * * *
>
> 22. His attorneys failed to object to the admission of an
> allegedly prejudicial presentence report that included
> inadmissible hearsay.
>
>              * * *
>
> Although the burden of pleading and proof as to these
> arguments was on Jones, see Rule 32.3, Ala.R.Crim.P., he
> presented no evidence at the hearing to support his
> argument that his counsel's performance with regard to
> these claims fell "outside the wide range of
> professionally competent assistance." *Strickland*, 466
> U.S. at 690, 104 S.Ct. at 2066.  He failed to satisfy
> the burden-of-proof requirements of Rule 32.3.
> Furthermore, Jones presented no evidence to show how he
> was prejudiced by these alleged instances of ineffective
> assistance. *McNair v. State*, 706 So.2d 828 (Ala.Cr.App.
> 1997), cert. denied, 523 U.S. 1064, 118 S.Ct. 1396, 140
> L.Ed.2d 654 (1998).  As this court observed in
> *Stringfellow v. State*, 485 So. 2d 1238, 1243
> (Ala.Cr.App.1986), "'[e]ffectiveness of counsel does not
> lend itself to measurement by picking through the
> transcript and counting the places where objections might
> be made.'"
>
>              * * *
>
> In an exercise of diligence, however, we have reviewed
> each and every allegation of ineffective assistance of
> counsel and have found either that the allegation is
> without merit or that Jones failed to prove it.  We have
> also considered the collective effect of all of the

alleged errors and still find no error or violation of Jones's rights.

After reviewing the overwhelming evidence against Jones, including his confession, we believe that while his trial counsel may have made certain strategic choices that Jones now challenges, counsel did not render ineffective assistance. An accused is entitled "'not [to] errorless counsel, and not [to] counsel judged ineffective by hindsight, but [to] counsel reasonably likely to render and rendering reasonably effective assistance.'" *Thompson v. State*, 615 So.2d 129, 134 (Ala.Cr.App. 1992), cert. denied, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed. 2d 418 (1993), quoting *Haggard v. Alabama*, 550 F.2d 1019, 1022 (5th Cir. 1977). We find no merit to any of Jones's allegations of ineffective assistance of counsel. Jones has not shown "by a preponderance of the evidence the facts necessary to entitle [him] to relief" on any issue concerning the ineffectiveness of his trial counsel. Rule 32.3, Ala.R.Crim.P.

Jones v. State, 753 So. 2d 1174, 1197-99 (Ala. Crim. App.), cert. denied, (Ala. 1999). A review of the Rule 32 hearing transcript confirms that petitioner offered no evidence concerning the introduction of the presentence investigation or its potential prejudicial effect. Failure to factually develop a claim in a hearing in state court precludes a petitioner from attempting to prove the claim at a subsequent federal habeas hearing, unless the petitioner's case meets the conditions of 28 U.S.C. § 2254(e)(2). Michael Williams v. Taylor, 529 U.S. 420, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000). Further, a review of the sentencing phase of the trial before the jury fails to reveal the introduction of a presentence investigation report into evidence for consideration by the jury.

-54-

The court finds this claim to be unsupported by any evidence. Petitioner offered nothing on it at the Rule 32 hearing, and he is now precluded from offering any other evidence under 28 U.S.C. § 2254(e)(2). There is nothing in the record to show that the jury improperly considered evidence or information from a presentence investigation report during the petitioner's sentencing phase. Further, even assuming the presentence report was admitted into evidence and the jury considered it during the penalty phase, there is no evidence that it had any illegal detrimental effect on sentencing. Petitioner has pointed to no specific part of or information contained in the presentence report that the court can say undermines confidence in the outcome of the sentencing hearing. Thus, this claim is meritless.

V.  Habeas Claim A(5) (Failure to Object to Electrocution as Means of Execution)-- At paragraph 60 of the petition, petitioner alleges ineffective assistance of counsel due to his attorneys' failure to object to electrocution as a means of execution. As Alabama has recently adopted lethal injection as the presumptive means of execution, this claim would appear to be moot or meritless. In the very least, even if counsel can be faulted for failing to object to electrocution at the time of petitioner's sentencing, the change to lethal injection means that petitioner will suffer no prejudice from that failure. Thus, either the claim

is moot or it is meritless because there is no prejudice under the
_Strickland_ standard.


   VI.  Habeas Claim A(6) (Failure to Object to Improper Comments
by Prosecutor)-- Petitioner asserts at paragraph 61 of the petition
that he received ineffective assistance of counsel because his
attorneys failed to object to certain comments made by the
prosecutor during closing arguments of the penalty phase of trial.
Particularly, he contends that references to him as a "blood-
thirsty savage" and a "blood-thirsty murderer" prejudiced the jury
and should have been the subject of objections by counsel.[9]
Petitioner raised this claim in his Rule 32 petition at II.A.4.pp.
(See Second Amended Rule 32 petition, p. 15).  On appeal from
denial of Rule 32 relief, the Alabama Court of Criminal Appeals
concluded that petitioner failed to offer any evidence on this (and
other) claims and, therefore, failed to carry his burden of proving
ineffective assistance.[10]

   During the final arguments at the penalty phase of
petitioner's trial, the prosecutor made the following comments:

   ───────────────────

   [9]  A similar claim is asserted at Habeas Claim A(14).

   [10]  See quotation from Jones v. State, 753 So. 2d 1174, 1197-99
(Ala. Crim. App.), cert. denied, (Ala. 1999), in text above under
section IV.  Habeas Claim A(4).  As the trial transcript containing
this part of the argument was put into evidence at the Rule 32
hearing, it is not strictly correct that no evidence was offered on
the claim.  There was no other evidence offered to prove any
prejudicial effect by the comments.

When they stand up here and tell you there is a little
good in everybody and if you give him a chance, maybe way
on down the line, he will do some good, that is probably
correct.  Does this man deserve that chance?  Does it
mean more to you that maybe some day this savage... this
blood-thirsty murderer might do something good; or does
it mean more to you that by your verdict, you might keep
something from happening like happened to the Nelson
Family, who were asleep that night when this man and his
cohort came in and they shot the brother, they killed the
mother and father, and they stabbed them unmercifully
over and over again, through the neck and the heart?
They shot the little girl's eye out.  Does it mean more
to you  to return a verdict or to keep that from
happening again in this county, to keep this blood-
thirsty savage in jail and hope that someday he may do
something good?  It is in your hands.

Trial Record, pp. 461-2.  There was no objection by defense
counsel.  Nonetheless, the conclusion by the Alabama Court of
Criminal Appeals that petitioner failed to show that this was
ineffective assistance is not objectively unreasonable.  Taken in
context, the remarks were proper argument, presenting to the jury
the choices between a sentence of life in prison or a death
sentence, the deterrent effect of the sentence, and balance of
mitigating and aggravating circumstances present in the case.
While the use of the terms "blood thirsty savage" and "blood
thirsty murder," seem harsh, they did not undermine the fundamental
fairness of the sentencing proceeding. Spivey v. Head, 207 F.3d
1263 (11th Cir. 2000); Drake v. Kemp, 762 F.2d 1449, 1458 (11th Cir.
1985)("Improper argument will only warrant relief if it renders a
petitioner's trial or sentencing 'fundamentally unfair'").  Both
comments, in context, conveyed the brutality of the murders as well

-57-

as the defendant's lack of remorse, both legitimate sentencing considerations. Thus, because the remarks were not improper, it was not ineffective assistance for counsel not to object to them.

Alternatively, even if counsel can be faulted for not objecting, no prejudice resulted because the comments did not undermine the fundamental fairness of the sentencing process. In either event, petitioner has not established ineffective assistance of counsel under the <u>Strickland</u> standard. This claim is meritless.

VII.   Habeas Claim A(7) (Failure to Object to Comments Regarding Victim and Family Impact)-- At paragraph 62 of the petition, it is alleged that petitioner received ineffective assistance of counsel because counsel failed to object to comments made by the prosecutors relating to the victim and family-member impact. This same claim was raised at paragraph qq in the Rule 32 petition. On appeal from denial of Rule 32 relief, the Alabama Court of Criminal Appeals concluded that petitioner failed to carry his burden of proving this claim at the Rule 32 hearing. Indeed, the court found that petitioner failed to offer any evidence on this claim, among others.[11] Because petitioner had an opportunity

---

[11]   See quotation from <u>Jones v. State</u>, 753 So. 2d 1174, 1197-99 (Ala. Crim. App.), <u>cert. denied</u>, (Ala. 1999), in text above under section <u>IV.   Habeas Claim A(4)</u>. As the trial transcript containing this part of the argument was put into evidence at the Rule 32 hearing, it is not strictly correct that no evidence was offered on the claim. There was no other evidence offered to prove

to prove this claim in state court proceedings, he cannot offer additional evidence in support of the claim in these proceedings without satisfying Section 2254(e)(2)'s conditions. <u>Michael Williams v. Taylor</u>, 529 U.S. 420, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000); 28 U.S.C. § 2254(e)(2).

A careful review of the statements and arguments advanced by the prosecution during the penalty phase of petitioner's trial reveals no improper comments concerning victim- or family-impact. In his opening statement at the beginning of the penalty phase, the prosecutor described four aggravating circumstances he expected the evidence to establish in support of the imposition of the death sentence. Concerning the fourth factor, that the murder was especially atrocious, heinous, and cruel, he said:

> The fourth one is this: The capital offense was especially heinous, atrocious or cruel compared to other capital offenses. The word there is "especially". The defendant will point that out to you and so will the judge. The capital offense was especially heinous, atrocious or cruel compared to other capital offenses.
> I won't back down one bit from what I said in my opening statement. This was not a murder. The evidence shows it was a mutilation of a family. I don't know how it could have been more heinous. I don't know how it could have been more atrocious; and I don't know how it could have been more cruel.
> We will rely on the testimony that is in evidence. We will rely on those pictures. They tell you what happened to Carl and Willene Nelson. We will rely on the testimony of Charlie Nelson. This is a part of the thing that makes this atrocious, cruel and heinous. The fact that that young boy who was ten or eleven at the time was

---

any prejudicial effect by the comments.

there on that bed, and he saw all of this.  He watched
his father being stabbed, and he watched his mother being
stabbed over and over and over again.  Not only was it
him, but his sister saw the same thing.  They had to sit
there on that bed.  Can you imagine the fear?  They had
to sit there on the bed and watch... not only that, but
suffer through it.  Can you imagine....

Trial Record, pp. 421-422.  Later, in closing arguments during the

penalty phase, the prosecution argued the following points that

might be regarded as comments about the victims or the impact of

the crime on family members:

Mr. Boles said he would rely on some previous
testimony in this guilt stage of the trial... the
testimony of Brenda and Charlie Nelson, as mitigating
factors for you to consider.  I'm sure Mr. Boles and Mr.
Davis will both argue to you about the mitigating
circumstances which are revealed by Brenda and Charlie
Nelson's testimony.  I don't know what is mitigating
about two little children lying on the bed getting their
eye blown out and their bodies slashed up.  He would have
you to believe it is not accurate-- it is incorrect.  You
have already made that decision.  You decided he was
guilty of capital murder.  You have already weighed the
testimony of Brenda and Charlie Nelson.  You have decided
whether or not to believe them.  And you believed them.
They were eye witnesses to their parents' mutilation.

Trial Record, p. 446.  Further, in describing the robbery motive of

the petitioner, the prosecutor commented that petitioner and his

accomplice "wiped out the whole family."  Trial Record, p. 447.

Finally, responding to the argument that the victims were already

dead when petitioner stabbed them, he said, "Mr. Boles said, in the

case you have heard for the last three days, that maybe the people

were already dead when Aaron Jones stuck them--stuck Mama twenty-

seven times--maybe she was dead already.  You have decided that she was not dead."  Trial Record, p. 447.

Plainly these comments were not improper.  The prosecution argued the evidence and the inferences properly drawn from the evidence to rebut the contentions made by petitioner's counsel for mitigation.  Although these particular comments drew focus to the plight of the family members present, such was part of the circumstances of the crime itself and relevant to the aggravating factor that it was especially atrocious, heinous, and cruel. Because there was no evidentiary basis on which to object, it was not ineffective assistance of counsel not to object to them.  This claim is meritless.

VIII.  Habeas Claim A(8) (Failure to Adequately Pursue Defense that Victims were Dead When Stabbed by Petitioner)- At paragraphs 64 through 69 of the petition, it is alleged that petitioner received ineffective assistance of counsel because counsel failed to adequately pursue and present an alternative defense, namely, that the victims were already dead when petitioner stabbed them. This, it is argued, would show that petitioner lacked the requisite intent to kill, even as an accomplice, to make him eligible for the death penalty. See Enmund v. Florida, 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed.2d 1140 (1982)(holding that the death penalty is disproportionate with respect to a defendant who did not kill,

attempt to kill, and had no intention of killing).  During the Rule
32 proceedings in state court, the Alabama Court of Criminal
Appeals reached the following findings and conclusions:

> "Charlie Nelson testified that he saw Giles when his
> father, Carl Nelson, asked Giles to leave the home.  He
> saw Tony leave and heard two gunshots.  Giles, then,
> reappeared and shot Charlie's grandmother, who was
> standing in the doorway to Charlie's bedroom.  Giles
> proceeded to Charlie's parents' bedroom from where
> Charlie heard more gunshots.  Charlie ran to his parents'
> bedroom, where he saw Giles and another man, whom he
> positively identified at trial as the appellant.  He
> realized that his mother, his father and his sister had
> all been shot.  He jumped on top of his sister to protect
> her from further harm.  *As he lay there, he saw the
> appellant stab his mother and father with a knife.  His
> mother and father were both moaning as the appellant
> repeatedly stabbed them.* [Italics added]*.*

> \* \* \*

> "Dr. Joseph Embry of the Alabama Department of Forensic
> Science testified that Willene Nelson died from multiple
> stab wounds that damaged her heart, lungs, and kidneys.
> Her body received 29 knife wounds (17 stab wounds and 12
> slash wounds), numerous lacerations and abrasions about
> the head from a blunt instrument, and one gunshot wound
> to the left shoulder.  Dr. Embry testified that Carl
> Nelson died from a combination of gunshot wounds and stab
> wounds.  He was shot once through the heart and once in
> the left arm.  He was stabbed, approximately, eight
> times, including a stab wound in the neck which severed
> his spinal cord.  He also received numerous blunt
> instrument abrasions about the head.  *Dr. Embry testified
> that Carl Nelson was alive when he was stabbed in the
> neck.*" [Italics added].

> \* \* \*

> Jones argues that his trial counsel should have
> investigated thoroughly the timing of the allegedly fatal
> blows inflicted by Giles and compared those Jones
> admitted inflicting in his statement.  Jones further
> claims that evidence "(1) that before he inflicted any

wounds both victims were already dead and (2) that
[consequently] he did not and could not form the intent
required for a conviction of capital murder" was
available to his trial counsel at the time of his trial
and could have been used to show that he did not kill two
or more persons pursuant to one course of conduct and
that he did not have the necessary intent to kill.

The trial court found as follows with regard to this
claim:

> "Jack Davis participated in the first trial
> and was co-counsel to Mr. Roundtree.  Having
> participated in the prior trial, Davis was
> intimately acquainted with all the facts,
> circumstances, and evidence necessary to
> adequately represent Jones in 1982.  At trial
> in 1982, Davis and Boles presented a
> reasonable, coherent defense of Jones.  It is
> evident from the record that Jones denied any
> involvement in the murders.  Instead, he
> claimed that he was present but did not
> inflict any knife wounds or gunshot wounds to
> the victims.  The State's case depended upon
> the statements of the Nelson children who were
> surviving victims, and the confession of
> Jones.  Boles aggressively attacked the
> witnesses' versions of events.  Counsel
> impeached Brenda Nelson with prior
> inconsistent statements that she had made.  In
> fact, counsel had admitted prior inconsistent
> statements over the objections of the State
> and prevented the State from admitting into
> evidence the entirety of her statements.
> Counsel also vigorously opposed the admission
> of Jones's confession during the hearing on
> their motion to suppress and during the
> testimony of the State's witnesses before the
> jury.  Review of Mr. Davis's and Mr. Boles's
> examination of witnesses at trial confirms
> that both trial counsel were well prepared and
> were knowledgeable of all the facts and
> circumstances of the crime.
>
> "Petitioner now, in [a] Rule 32 [petition],
> presents a different defense theory and
> strategy to this Court.  That strategy and

defense is that Jones was at the scene of the
murder, was asked to enter the house after the
co-defendant Giles had shot and stabbed the
victims, and that Jones, at Giles's command,
stabbed the victims.  Although he stabbed the
victims, petitioner now claims that evidence
shows that Carl and Willene Nelson were
deceased at the time he inflicted the wounds
on their bodies;  therefore, this is evidence
of Jones's lack of intent to commit murder.
The presentation of this new theory is no more
than    second-guessing    trial    counsel's
performance after petitioner's conviction and
adverse sentence when the defense at trial
proved to be unsuccessful.    This is the
situation of which Strickland warned.

"Under the circumstances, and evaluating the
conduct of counsel and their perspective at
the time of the challenged conduct, it is
clear, based upon the first trial and the
statements of Jones during his sentencing in
the first case (CR 27, 28, 30, 31), that Jones
was denying that he inflicted any wounds
whatsoever on the victims.  It is clear from
his statements to the trial court concerning
his attorney that this was his plea and that
he was dissatisfied with his attorney, Mr.
Roundtree, for trying to present a mental
health defense.  The record also shows that
petitioner alleged that his confession was
only made because of promises made by the
sheriff's department concerning bond and that
the statement was not true but that he was
coerced into making it.  It would have been
unreasonable for counsel to argue before the
jury the alternative, contradictory theory
that petitioner now presents before this
Court.

"Under the circumstances that existed at the
time of trial, counsel could not have
presented the defense not offered, and
therefore was not ineffective for not
developing the strategy concerning the timing
of the fatal blows and the blows that
petitioner now argues that he did inflict.

-64-

> Trial counsel had the benefit of hindsight
> from the first trial in which to prepare and
> try the 1982 case for petitioner.  This Court,
> however, may not indulge in hindsight in its
> scrutiny of trial counsel's conduct."  (C.R.
> 1044-46.)

The trial court's findings, which are supported by the
record, indicate that it understood Jones's defense at
trial and that counsel, in light of their knowledge at
the time of trial, presented a vigorous defense.  As the
trial court correctly noted, Jones's counsel had the
benefit of Jones's 1979 trial, which led to a conviction
and the imposition of a sentence of death, to assist in
determining an appropriate defense to the evidence.
Davis, one of Jones's counsel in the 1982 trial,
represented Jones in the 1979 trial; therefore, he had
knowledge of what defense tactics were effective based on
the state's evidence, and what defenses, especially the
one of nonparticipation raised in the 1979 trial, were
not.  Additionally, as the trial court found, Jones
refused to engage in a plea bargain before the 1982
trial; that refusal indicated that he was not admitting
any participation in the murders.  Because the proposed
theory of lack of intent would require Jones to admit
participation in the acts, the theory presented in his
Rule 32 petition is incongruent with Jones's actions and
defense at trial.  We have reviewed the record of Jones's
direct appeal and agree with the trial court that Jones's
counsel did an adequate job in developing a defense based
on Jones's assertions at the time of the trial and the
facts and circumstances of the case.

Moreover, in light of the evidence presented at trial,
Jones's trial counsel may have made a strategic decision
to not focus on the issue whether the victims were dead
prior to Jones's participation.  The victims were stabbed
numerous times; there was testimony that the victims
either moaned or moved while Jones was stabbing them.  If
the testimony Jones contends should have been used at
trial was used, Jones would have essentially admitted
participation in the stabbings.  Consequently, if the
jury rejected the expert testimony that the victims were
already dead when Jones stabbed them, the jury could only
conclude that Jones killed the victims.  Furthermore, the
gravity of the eyewitness testimony that the victims lay
groaning, which leads to the reasonable inference that

-65-

the victims were alive before Jones stabbed them and
while Jones was stabbing them, was an additional factor
to consider in presenting such a defense.

Finally, we note that even if Jones did not inflict the
fatal blows, he would still be guilty of capital murder
as an accomplice.   Based on the totality of the
circumstances, we find that Jones has failed to establish
prejudice and a reasonable probability that, but for
trial counsel's actions in failing to present evidence
that the victims were already dead before Jones's
participation in the incident, the outcome of his trial
would have been different.  "Strategic choices made after
thorough investigation of relevant law and facts are
virtually unchallengeable."  Ex parte Lawley, 512 So. 2d
1370, 1372 (Ala. 1987).  We will refrain from the use of
hindsight in evaluating trial counsel's decisions.   See
Hallford, 629 So.2d at 9;  and State v. Tarver, 629
So. 2d 14, 21 (Ala.Cr.App.1993).   See also Cade v.
State, 629 So. 2d 38, 42 (Ala.Cr.App.1993), cert. denied,
511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed. 2d 221 (1994)
(holding that "an attorney may reasonably decide to avoid
presenting evidence [or a defense] that he believes will
do more harm than good").   We agree with the trial
court's ruling that Jones's counsel did not render
ineffective assistance in this regard.

Jones v. State, 753 So. 2d 1174, 1179, 1183-85 (Ala. Crim. App.),

cert. denied, (Ala. 1999).

These findings and conclusions are not objectively
unreasonable and, thus, are entitled to a presumption of
correctness under § 2254(d).  In light of the evidence, it was not
unreasonable for counsel to elect to pursue the defense they did,
rather than a contradictory defense that had no hope of success.
Even if both victims were already dead when petitioner stabbed
them, this neither negates his participation in the killings as an
accomplice nor does it eliminate the fact that he intended to kill

-66-

when he went to the house, armed with a pistol, to rob the occupants. For this defense to succeed, petitioner would have had to create a reasonable doubt in the minds of the jurors, not only that one of the victims was already dead[12], but also that petitioner knew he or she was dead and, further, that he never intended for anyone to get killed, despite that fact that he and Giles, both armed, went to the house to rob the occupants. The conclusion that counsel were not constitutionally ineffective, either because they chose to forego this defense or because no prejudice resulted from failing to present it, is neither contrary to nor an unreasonable application of Strickland. Therefore, petitioner is not entitled to relief on this claim.

IX. Habeas Claim A(9) (Failure to Object to Accomplice Liability Instruction)-- At paragraphs 71 through 76 of the petition, petitioner alleges that he received ineffective assistance of counsel because his attorneys failed to object to the trial court's jury instruction on accomplice liability. In particular, petitioner asserts that the court's instruction omitted

---

[12]    Petitioner was charged only with the capital offense of killing two or more persons, not with the distinct capital offense of killing a person during a robbery. Thus, to carry its burden of proving this offense, the prosecution was required to prove that petitioner participated in or aided and abetted the intentional killing of both victims.

the requirement that he have "a particularized intent to kill,"
beyond his mere participation in the acts of his accomplice.

The Alabama Court of Criminal Appeals considered this claim on
appeal from denial of Rule 32 relief.  It said:

> Jones argues that the trial court's instruction on
> accomplice liability was "clearly improper and erroneous
> because it failed to instruct the jury on the
> particularized intent to kill necessary to sustain a
> capital murder conviction."  (Appellant's brief at pp.
> 20-21.)

> The trial court instructed the jury as follows with
> regard to particularized intent and accomplice liability:

>> "A person cannot be guilty of murder in the
>> first degree under [§ 13-11-2(a)(10), Ala.Code
>> 1975] [footnote omitted] unless all four of
>> these elements are present. First, he has to
>> intend to take human life when he does the
>> act.   Second, he has to kill willfully.
>> Third, he has to kill deliberately and with
>> premeditation.  And four, he must kill with
>> malice aforethought. If any one of these four
>> elements is absent, he is not guilty of murder
>> in the first degree as set out in the statute
>> defining murder in the first degree. *In
>> addition to being convinced beyond a
>> reasonable doubt and to a moral certainty that
>> the defendant committed murder in the first
>> degree, as I have defined to you, it would
>> also be necessary for the State of Alabama to
>> prove beyond a reasonable doubt and to a moral
>> certainty that at said time two or more human
>> beings were intentionally killed by the
>> defendant by one or a series of acts.*

>> "So to find the defendant guilty as charged,
>> *you would also have to find from the evidence
>> beyond a reasonable doubt and to a moral
>> certainty that the defendant did by one or a
>> series of acts intentionally kill two or more
>> human beings.*  If after consideration of all
>> the evidence in the case, you are convinced

-68-

beyond a reasonable doubt and to a moral certainty that the defendant is guilty of murder in the first degree, as I have explained to you, and *if you are further convinced beyond a reasonable doubt and to a moral certainty that the defendant did at the same time and occasion intentionally kill two or more human beings by one or a series of acts as charged in the indictment*, then it would be your duty to find the defendant guilty as charged.

"Now, ladies and gentlemen, there has been some evidence offered in this case indicating that at the time and the place this alleged offense occurred there was more than one person who was present and participated in the act that was set out by the wording of the indictment.   Under our law it is well established that when by pre-arrangement or on the spur of the moment two or more persons enter upon a common enterprise or a venture and a criminal offense is contemplated, each is a co-conspirator.   And if the purpose was carried out, each is guilty of the offense committed whether he did any overt acts or not.   This rests on the principle that one who is present, encouraging, aiding, abetting or assisting the other in the perpetration or commission of an offense is a guilty participant, and in the eye of the law is as equally guilty as the one who does the act. Such community of purpose or conspiracy need not be proved by positive testimony.   The jury is to determine whether that exists and the extent of it from the conduct of the parties and all the testimony in the case.

"When two or more persons enter upon an unlawful purpose with the common intent to aid and encourage each other in anything within their common design, they are each responsible for everything which was consequently and subsequently the result from such unlawful purpose whether specifically contemplated or not."

(C.R. 685-88;  R. on dir. app. 395-98.)

The trial court's instruction that the jury find that
Jones had the requisite intent immediately preceded its
instruction on accomplice liability. When read together,
and especially in light of the fact that the instruction
on accomplice liability immediately followed the trial
court's instruction on the necessity of finding a
particularized intent to kill, we find no reversible
error in the trial court's charge to the jury.  We
acknowledge that the portion of the trial court's
instruction that states, "they are each responsible for
everything which was consequently and subsequently the
result from such unlawful purpose whether specifically
contemplated or not" may be confusing and may appear
prejudicial.  However, we believe, in light of the
concreteness of the trial court's instruction on the
finding of particularized intent and in light of the
evidence, argument, and instructions presented at trial,
the jury, even if it convicted Jones based on the theory
of accomplice liability, found that Jones possessed the
necessary intent to kill.  Therefore, the trial court's
instructions on intent and accomplice liability when
given a reasonable construction in light of the facts
adduced at trial did not constitute reversible error.
Davis v. State, 740 So.2d 1115 (Ala.Cr.App. 1998);
Roberts v. State, 735 So.2d 1244 (Ala.Cr.App. 1997); and
George v. State, 717 So.2d 827 (Ala.Cr.App. 1996), rev'd
on other grounds, 717 So.2d 844 (Ala. 1996).

Because we find no reversible error in the trial court's
instruction to the jury on accomplice liability and
particularized intent, we cannot conclude that Jones's
trial counsel was ineffective for not challenging these
instructions.  Counsel cannot be ineffective for failing
to raise nonmeritorious objections. [Italics added].

Jones v. State, 753 So. 2d 1174, 1185-87. (Ala. Crim. App.), cert.
denied, (Ala. 1999).

These findings and conclusions are not objectively
unreasonable and, thus, are entitled to a presumption of
correctness under § 2254(d).  Read in its entirety, the court

-70-

clearly instructed the jury twice that the State's burden of proof
included proving that petitioner had a particularized intent to
kill.  The conclusion by the Court of Criminal Appeals that counsel
was not ineffective, either because no meritorious objection
existed or because the instruction was sufficiently clear to leave
the jury with no confusion about intent, was neither contrary to or
an unreasonable application of Supreme Court precedent.  Petitioner
is not entitled to relief on this claim.

   X.  Habeas Claim A(10) (Failure to Request Jury Instruction on
Voluntary Intoxication and Lesser Offense of Manslaughter)-- At
paragraphs 77 through 81 of the petition, it is contended that
counsel were ineffective because they failed to request jury
instructions on voluntary intoxication as a factor that negates a
specific intent, reducing the offense to manslaughter.  Petitioner
points out that ample evidence was presented at trial to show that
petitioner was intoxicated at the time of the offense, yet counsel
did not request or argue that his intoxication was sufficient to
require an instruction concerning the effect of intoxication on the
formation of a specific intent.

    The Alabama Court of Criminal Appeals considered this claim in
the Rule 32 appeal.  It wrote:

        Likewise, the evidence presented at trial failed to
        support a jury instruction on voluntary intoxication.
        Evidence was admitted in the form of Jones's[sic]

-71-

statement to law enforcement officers in which he admitted that he and Giles had been drinking rum and beer before going to the victims' house; however, such an admission does not prove that he was intoxicated. Windsor v. State, 683 So. 2d 1027 (Ala.Cr.App. 1994), aff'd, 683 So. 2d 1042 (Ala. 1996), cert. denied, 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed. 2d 545 (1997). Additionally, although Charlie Nelson testified that Jones and his accomplice seemed "drunk" and although Jones admitted in his statement that he "was just so gone," when he stabbed the victims that he just closed his eyes and stabbed wildly, none of the evidence presented at trial indicated that he was so intoxicated that he could not form the requisite intent to sustain a conviction for murder. Coon v. State, 494 So. 2d 184, 188 (Ala.Cr.App. 1986); Lawrence v. State, 341 So. 2d 188, 193 (Ala.Cr.App. 1977)(holding "that voluntary drunkenness is not a defense to a criminal charge unless it is so extreme as to render impossible some mental condition which is an essential element of the criminal act"). The evidence here simply does not support such a charge.

At his Rule 32 hearing and on appeal, Jones contends that his trial counsel was [sic] ineffective for not presenting evidence that he was intoxicated at the time of the murders. Jones argues that the testimony of Glen Jones, his sister, would have established that he was intoxicated at the time of the murders. We agree with the trial court, however, that counsel made a strategic choice not to present this defense and not to call Glen Jones as a witness in the 1982 trial. Glen Jones testified during the 1979 trial. In her testimony she admitted that she allowed Jones to "shoot up" with drugs while her children were in her house. In addition to her character being challenged, her testimony was impeached and, consequently, led to the implication that Jones's accomplice did not have to coerce Jones to participate in the murders. As the trial court stated,

> "It is easy to see why counsel would be reluctant to call Glen Jones for the second trial after hearing her testimony from the first trial.... Since petitioner was convicted in his 1979 trial, trial counsel in the 1982 trial had good reason to avoid using Glen Jones as a witness.... In reviewing the

-72-

> testimony of Glen Jones, this Court is of the
> opinion that it was a sound strategic decision
> of trial counsel not to present Glen Jones as
> a witness at trial."

(C.R. 1059-60.)

Jones's[sic] trial counsel had knowledge of the previous
trial and of the effectiveness at that trial of the
testimony of various witnesses, especially the testimony
of Glen Jones.  Based on our review of the first trial,
we cannot say that it was error for trial counsel not to
present testimony from Glen Jones to establish Jones's
intoxication, in light of the questionable credibility of
her testimony in the previous trial.  "'[I]f an attorney
is aware of a line of defense and makes a conscious
decision to reject it, rather than failing to raise it
simply because he was aware that it existed, it is more
likely that the failure to raise the defense was
reasonable.'"  <u>Cade v. State</u>, 629 So. 2d at 41-42,
quoting, <u>Gates v. Zant</u>, 863 F.2d 1492, 1498 (11th Cir.),
cert. denied, 493 U.S. 945, 110 S.Ct. 353, 107 L.Ed. 2d
340 (1989).  Therefore, because trial counsel made a
strategic choice not to present an intoxication defense,
we do not conclude that Jones's trial counsel was
ineffective for not presenting evidence of his voluntary
intoxication, nor do we find error in their failure to
request a charge on voluntary intoxication--the evidence
simply did not support it.

<u>Jones v. State</u>, 753 So. 2d 1174, 1190-91 (Ala. Crim. App.), <u>cert.</u>

<u>denied</u>, (Ala. 1999).

Section 2254(d)(1) provides that a federal habeas court may

not grant relief with respect to any claim that was resolved by the

state courts, unless that resolution is "contrary to" or "an

unreasonable application" of Supreme Court precedent.

Additionally, state court resolution of a claim is entitled to no

deference if it "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence

-73-

presented in the State court proceeding." <u>See</u> 28 U.S.C. §
2254(d)(2). Expressly stated in the resolution of this issue by
the Alabama Court of Criminal Appeals is the finding of fact that
petitioner's counsel actually considered and rejected the idea of
offering the testimony of petitioner's sister, Glen Jones, because
she made a bad witness in the 1979 trial. The evidence of this
fact is fairly scant, if it exists at all, in the Rule 32 record,
and it is unclear on what evidentiary basis the state courts relied
in finding that counsel intentionally and strategically decided not
to offer the testimony of Glen Jones with respect to petitioner's
intoxication the night of the murders.

As Jack Davis was deceased at the time of the Rule 32 hearing,
the only defense attorney available to testify about counsel's
strategic and tactical decisions in the 1982 trial was George
Boles. The only testimony Boles gave that relates at all to either
an intoxication defense or the testimony of Glen Jones is found at
pages 147 and 148 of the Rule 32 hearing transcript, where the
following occurred:

> Q: And some how or another you and Jack decided not to
> introduce any testimony from any family members; is that
> correct?
>
> A: There was not any testimony from family members
> introduced. My recollection, which is pretty sketchy
> because, again, this and everything else and goes back
> thirteen years, but that there was some problem with the
> family members at that time and there was some reason
> Jack didn't want to bring the family members into it. I

don't remember what it was, Grant, but I just recall
vaguely that there was some problem with family members.

Q: Every family member that Aaron Jones had?

A: All I'm telling you is that I remember Jack telling me
that there was some problem of -- I say I remember, but
I have a recollection of some sort that Jack was saying
that there was a problem with family members.  I don't
remember what it was, I don't remember who it was.  At
this time I couldn't tell you.

Q: Did you know at that time who the family members were,
sir?

A: I'm not sure I did, at that time.

Q: Did you know that Aaron Jones had a sister named Glen,
sir?

A: I don't know now what I knew then.

Q: Do you have any recollection that Mr. Jones had a
sister named Glen, sir?

A: I don't recall now what I recalled then as to specific
names and relationships.

Q: Do you remember whether you knew that he had a sister
at all, sir?

A: No I do not recall now what I recalled or knew then.

Even this testimony appears to be in the context of questioning

regarding decisions made in relation to the sentencing phase of the

trial, not the guilt phase.  But giving the testimony its best

reading, it would appear that a court might infer from it that Jack

Davis, being aware of Glen Jones' testimony in the 1979 trial, told

George Boles that "family members" would be problematic witnesses

to put on the stand.  It is far from clear, however, that Davis and

-75-

Boles specifically discussed Glen Jones as a witness or her ability to add testimony concerning the degree of intoxication petitioner was suffering the night of the murders, much less that they deliberately decided to forego her testimony on intoxication as a strategic choice. Thus, the court is troubled by the finding of fact made by the state courts on this claim, when the evidence supporting it is so scant and inconclusive. Such a finding may well be "an unreasonable determination of the facts in light of the evidence presented," depriving the state courts' resolution of this claim of any deference under § 2254(d).

Nevertheless, it is clear from the Rule 32 hearing testimony that the defense "theme" or strategy was to portray the defendant as a weak "follower," who was coerced by Giles, perhaps even at gunpoint, into participating in the murders and, therefore, was less culpable than Giles and less deserving of the death penalty. Although evidence of intoxication would not have been inconsistent with this defense, and might even have bolstered it, the absence of intoxication evidence does not mean that counsel's representation of petitioner was constitutionally ineffective. Counsel identified and pursued a reasonable strategy, grounded in the evidence as they knew it, aimed at lessening the risk of getting the death penalty. While not a legal defense itself, this strategy addressed the most important concern at the time, whether the culpability of petitioner's participation was worthy of the death penalty.

-76-

Furthermore, evidence that petitioner was intoxicated *did* come out at trial, both in petitioner's own confession and in the testimony of prosecution witnesses, who described him and Giles as being "drunk" when they entered the Nelson home.  To the extent this evidence aided the "weak follower/coercion" strategy, the jury had it to consider.  Still, the state courts correctly concluded that the evidence did not establish that petitioner's intoxication *was so* extreme that he was unable to form the necessary criminal intent to kill, and thus that it was insufficient to rise to the level of requiring consideration of a lesser offense.  Indeed, petitioner's own confession revealed that he retained enough presence of mind, despite his intoxication that night, to recall the events of the crime, indicating that his intoxication was not so great that he lacked the ability to form the necessary intent. In the absence of evidence establishing such extreme intoxication, it was not error for the trial court to decline to instruct the jury on the effect of voluntary intoxication.  Further, because the trial court was under no obligation to give the instruction, counsel's failure to request it was not ineffective assistance because it resulted in no prejudice to the defense; that is, the petitioner lost nothing to which he was entitled under the law. See Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed. 2d 180 (1993)("Unreliability or unfairness [as the measure of prejudice under Strickland] does not result if the

-77-

ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him"); see also <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000). Petitioner is not entitled to relief on this claim.

    XI. <u>Habeas Claim A(11)</u> (Failure to Object to a "Burden-Shifting" Jury Instruction)-- Petitioner alleges at paragraphs 82 through 84 of the petition that he received ineffective assistance of counsel because his attorneys failed to object to the trial court's instruction on "malice" as an element of the capital charge.     He     contends     that     the     court's     instruction unconstitutionally shifted away from the  prosecution the burden of proving malice, and placed the burden on petitioner to rebut it.

    On appeal from denial of Rule 32 relief, the Alabama Court of Criminal Appeals reviewed the claim[13] that the instruction itself was a violation of due process.  Rejecting that claim, the court wrote as follows:

> Jones contends that the trial court committed reversible error when it instructed the jury on the element of

---

[13] Although the discussion of the "malice" instruction in the opinion of the Alabama Court of Criminal Appeals appears to be addressed to the substantive due process claim, it is found in a section of the opinion dealing with petitioner's claims of ineffective assistance of counsel.   Thus, the actual claim of ineffective assistance due to the failure to object to an allegedly burden-shifting instruction was actually considered and resolved.

malice, because, he says, the instruction created a
"mandatory presumption" that relieved the state of its
burden of persuasion of the element of malice and shifted
that burden to him.

 The trial court instructed the jury as follows:

   "Now, we have [a] statute which defines murder
   in the first degree.  This statute says that
   every willful, deliberate, malicious and
   premeditated killing of a human being is
   murder in the first degree.  Now I will
   undertake to define these four terms for you
   in order that you may better understand them,
   and in doing so, will use the language used by
   the Supreme Court many years ago.

   "Willful means governed by the will without
   yielding to reason.  Deliberate means formed
   with deliberation in contradistinction to a
   sudden and rash act.  Malice means done with a
   fixed hate or wicked intention or a motive,
   not the result of a sudden passion.  That is
   the definition of actual malice.  But the word
   malice, as used in this statute which defines
   murder, has a broader meaning than that.  It
   includes, not only actual malice, but includes
   what we call legal or implied malice.  And in
   the broader sense, it means the state or
   condition of the mind which prompted a person
   to do an unlawful act without legal
   justification or extenuation.

   "*Now every intentional and unlawful killing of
   a human being is presumed to be done with
   malice aforethought unless the circumstances
   that surround the killing rebut the idea of
   malice.  Every intentional and unlawful
   killing of a human being with a deadly weapon,
   such as a pistol or with a knife, is presumed
   to be done with malice unless the evidence
   that proved the killing rebuts the presumption
   of malice.*"

(C.R. on Rule 32 683-685.)(R. on dir. app. 393-95.)

This court has written:

-79-

"'Inferences and presumptions are a staple of our adversary system of factfinding.  It is often necessary for the trier of fact to determine the existence of an element of the crime--that is, an "ultimate" or "elemental" fact--from the existence of one or more "evidentiary" or "basic" facts. E.g., <u>Barnes v. United States</u>, 412 U.S. 837, 843-844 [93 S.Ct. 2357, 2361-62, 37 L.Ed. 2d 380][(1973)]; <u>Tot v. United States</u>, 319 U.S. 463, 467 [63 S.Ct. 1241, 1244, 87 L.Ed. 1519][(1968)]; <u>Mobile, Jackson & K.C.R. Co. v. Turnipseed</u>, 219 U.S. 35, 42 [31 S.Ct. 136, 137, 55 L.Ed. 78][(1910)].  The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the factfinder's freedom to assess the evidence independently. Nonetheless, in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant:  the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.  <u>See</u> <u>In re Winship</u>, 397 U.S. 358, 364 [90 S.Ct. 1068, 1072, 25 L.Ed. 2d 368][(1970)]; <u>Mullaney v. Wilbur</u>, 421 U.S. [684,] at 702-703, n. 31 [95 S.Ct. 1881, 1891-92, n. 31, 44 L.Ed. 2d 508][(1975)].

"'The most common evidentiary device is the entirely permissive inference or presumption, which allows--but does not require--the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. <u>See, e.g.</u>, <u>Barnes v. United States</u>, supra, [412 U.S.], at 840 n. 3 [93 S.Ct. at 2360 n. 3]....  Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard only

-80-

if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference.  For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.

"'A mandatory presumption is a far more troublesome evidentiary device.  For it may affect not only the strength of the "no reasonable doubt" burden but also the placement of that burden;  it tells the trier that he or they must find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts.  E.g., Turner v. United States, [396 U.S. 398,] 401-402, and n. 1 [90 S.Ct. 642, 644-45, 24 L.Ed. 2d 610 (1970)]; Leary v. United States, 395 U.S. 6, 30 [89 S.Ct. 1532, 1545, 23 L.Ed. 2d 57] [(1969)]; United States v. Romano, 382 U.S. 136, 137, and n. 4, 138, 143 [86 S.Ct. 279, 280, and n. 4, 280, 283, 15 L.Ed. 2d 210] [(1965)]; Tot v. United States, supra [319 U.S.], at 469 [63 S.Ct. at 1245].  In this situation, the Court has generally examined the presumption on its face to determine the extent to which the basic and elemental facts coincide.  E.g., Turner v. United States, supra [396 U.S.], at 408-418 [90 S.Ct. at 648- 53]; Leary v. United States, supra [395 U.S.], at 45-52 [89 S.Ct. at 1552- 57];  United States v. Romano, supra [382 U.S.], at 140-141 [86 S.Ct. at 281-82]; Tot v. United States, 319 U.S., at 468 [63 S.Ct., at 1245].  To the extent that the trier of fact is forced to abide by the presumption, and may not reject it based on an independent evaluation of the particular facts presented by the State, the analysis of the presumption's constitutional validity is logically divorced from those facts based on the presumption's accuracy in the run of cases.  It is for this reason that the Court has held it irrelevant in analyzing a

mandatory presumption, but not in analyzing a
purely permissive one, that there is ample
evidence in the record other than the
presumption to support a conviction. E.g.,
Turner v. United States, 396 U.S., at 407 [90
S.Ct., at 647]; Leary v. United States, 395
U.S., at 31-32 [89 S.Ct., at 1545-46]; United
States v. Romano, 382 U.S. at 138-139 [86
S.Ct. at 280-81].'" County Court of Ulster
County, New York v. Allen, 442 U.S. 140,
156-60, 99 S.Ct. 2213, 2224-26, 60
L.Ed. 2d 777 (1979) (footnotes omitted,
emphasis in original)."

Beard v. State, 612 So. 2d 1335, 1342-43 (Ala.Cr.App.
1992). See also Manuel v. State, 711 So. 2d 507
(Ala.Cr.App. 1997).

Here, the predicate fact supporting the presumption is
Jones's intentional and unlawful killings of the victims
with a deadly weapon, i.e., a knife. The presumed fact
that the jury was instructed to conclude from proof of
the killings is that Jones committed the murders with
malice aforethought. However, in order for the jurors to
reach that conclusion, the State had to prove that Jones
killed the victims intentionally and that the
circumstances of the killings evidenced that Jones acted
with malice aforethought. We do not find that the trial
court's instruction shifted the State's burden to
establish the element of malice to Jones. In this
situation, the permissive presumption "'[did] not relieve
the state of its burden of persuasion because the
presumption still require[d] the state to convince the
jury that the suggested conclusion should be inferred
based on the predicate facts proved.'" Beard, 612 So.2d
at 1343, quoting Francis v. Franklin, 471 U.S. 307, 314,
105 S.Ct. 1965, 1971, 85 L.Ed. 2d 344 (1985).

Therefore, we conclude that the instruction could not
reasonably be read, as Jones suggests, as instructing the
jury that it was required to infer or presume the element
of malice aforethought in the absence of evidence from
Jones presented evidence that such a presumption was
unwarranted. Consequently, we do not consider the trial
court's instruction violative of the Due Process Clause
of the Fourteenth Amendment, which "protects the accused
against conviction except upon proof beyond a reasonable

doubt of every fact necessary to constitute the crime
with which he is charged." In re Winship, 397 U.S. 358,
364, 90 S.Ct. 1068, 1073, 25 L.Ed. 2d 368 (1970).
Because we do not believe that a reasonable juror could
have interpreted this instruction as relieving the
prosecution of its burden of persuasion on each essential
element of the charged capital murder, we find no error.
Moreover, the trial court also gave a charge concerning
the defendant's presumption of innocence and the State's
burden of proof.  Therefore, when considering the jury
instruction in its entirety, the error, if any, was cured
by the additional charges.  Hubbard v. State, 584 So. 2d
895 (Ala.Cr.App. 1991), cert. denied, 502 U.S. 1041, 112
S.Ct. 896, 116 L.Ed. 2d 798 (1992); Sims v. State, 386
So.2d 767 (Ala.Cr.App. 1980)(holding that trial court's
instruction on malice did not shift the State's burden of
proof to the defendant).

Because Jones has failed to establish that the trial
court's instruction on malice constituted error, he has
failed to show that his trial counsel was ineffective for
failing to challenge this instruction. [Italics added].

Jones v. State, 753 So. 2d 1174, 1187-89 (Ala. Crim. App.), cert.

denied, (Ala. 1999).

Although the court is not persuaded that all of the reasoning

used by the Alabama Court of Criminal Appeals to arrive at the

conclusion that no ineffective assistance occurred is correct,[14] the

-----

[14]    While perhaps not necessary to catalogue all of the
concerns this court has with the reasoning of the Court of Criminal
Appeals, it is worth noting some parts of the rationale that seem
"contrary" to or an "unreasonable application" of such Supreme
Court precedent as Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct.
2450, 61 L.Ed. 2d 39 (1979) and Francis v. Franklin, 471 U.S. 307,
105 S.Ct. 1965, 85 L.Ed. 2d 344 (1985).  For example, the state
appellate court concluded that the instruction in this case
involved merely a permissive inference, not a mandatory
presumption.  However, the Supreme Court emphasized in Sandstrom
and Francis that the use of the words "presume" or "presumption"
imply a mandatory finding, not merely a permissive inference the
jury may or may not draw.  As the Supreme Court noted in Francis:

court does agree ultimately that petitioner did not receive
ineffective assistance due simply to counsel's failure to object to
the trial court's malice instruction.  This court agrees that no
ineffective assistance in this regard occurred for two reasons.

---

> The challenged sentences are cast in the language of
> command.  They instruct the jury that "acts of a person
> of sound mind and discretion are *presumed* to be the
> product of the person's will," and that a person "*is
> presumed* to intend the natural and probable consequences
> of his acts," App. 8a- 9a (emphasis added).  These words
> carry precisely the message of the language condemned in
> Sandstrom, 442 U.S., at 515, 99 S.Ct., at 2454 ("'The law
> presumes that a person intends the ordinary consequences
> of his voluntary acts'").  [Italics in original].

Id. at 316.  Consequently, it is difficult to say that the
conclusion reached by the state appellate court is not "contrary
to" Francis.  Likewise, the state court concluded that general
instructions about the defendant's presumption of innocence and the
state's burden of proof cured any defect in this particular
instruction on malice.  Again, both Sandstrom and Francis rejected
the notion that such general instructions are adequate to cure a
specific burden-shifting instruction.  The Court explained in
Francis, as follows:

> As we explained in Sandstrom, general instructions on the
> State's burden of persuasion and the defendant's
> presumption of innocence are not "rhetorically
> inconsistent with a conclusive or burden-shifting
> presumption," because "[t]he jury could have interpreted
> the two sets of instructions as indicating that the
> presumption was a means by which proof beyond a
> reasonable doubt as to intent could be satisfied." 442
> U.S., at 518-519, n. 7, 99 S.Ct., at 2456, n. 7....
> These general instructions as to the prosecution's burden
> and the defendant's presumption of innocence do not
> dissipate the error in the challenged portion of the
> instructions.

Id. at 319-320.  Thus, again, the conclusion that general burden of
proof instructions cured the defect in this burden-shifting
instruction is "contrary to" Francis.

First, the instruction did not really relieve the State of the burden of proving all elements of the offense of capital murder; and, second, if the instruction was error, it was harmless error in light of the overwhelming evidence against petitioner. Under either rationale, counsel's failure to object to the malice instruction caused no prejudice to the defense.

Insofar as the Alabama Court of Criminal Appeals concluded that the particular instruction on malice did not relieve the State of the burden of proving every element of capital murder, it is correct. Recall that the instruction was as follows:

> Now every intentional and unlawful killing of a human being is presumed to be done with malice aforethought unless the circumstances that surround the killing rebut the idea of malice. Every intentional and unlawful killing of a human being with a deadly weapon, such as a pistol or with a knife, is presumed to be done with malice unless the evidence that proved the killing rebuts the presumption of malice.

Further, Alabama law defines malice in this context as "the state or condition of the mind which prompted a person to do an unlawful act without legal justification or extenuation." Under the court's instruction, the jury "presumed" malice, that is, that the murders were done with a recognition that they were "without legal justification or extenuation," only after finding first that the killings were "*intentional* and *unlawful*." [Italics added]. The state always retained the burden of proving both that the killings were intentionally done by petitioner and that they were unlawfully

-85-

done by him.  The jury's finding that the killings were intentional and unlawful was, in effect, a finding of malice, notwithstanding the presumption contained in the instruction.

Finally, coupling the explicit placement of the burden of proving intentional and unlawful killings on the state with the concluding phrase of the instruction that malice is presumed "unless the evidence that proved the killing rebuts the presumption of malice," it becomes apparent that the instruction always required the *State's* evidence to prove malice.  If the "evidence that proved the killing," that is, the *State's* evidence, failed to show malice, then the presumption was rebutted.  The instruction never required the petitioner to offer any rebutting evidence; rather, it lay entirely in the State's burden of proof.  Thus, the instruction did not shift the burden to the petitioner and, therefore, was not objectionable.

Even if the instruction can be regarded as a burden-shifting instruction in violation of Sandstrom and Francis, the error in this case was harmless.  See Rose v. Clark, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed. 2d 460 (1986).  The overwhelming evidence against petitioner showed that he went to the Nelson home with Giles for the purpose of robbing them.  He was armed with a gun and, when the gun proved unusable, he stabbed the Nelsons multiple times with a butcher knife retrieved from their kitchen.  There can be no reasonable doubt that petitioner acted with the requisite malice.

-86-

that is, recognition that he acted without legal justification or extenuation.  As the malice instruction constituted harmless error, counsel's failure to object to it does not undermine confidence in the outcome of petitioner's trial; his trial remained fundamentally fair, despite this error.  Thus, without prejudice, there was no ineffective assistance of counsel, and petitioner is not entitled to relief on this claim.

    XII.  Habeas Claim A(12) (Failure to Adequately Support Motion for Change of Venue)-- At paragraph 85 of the petition, it is alleged, as follows:

> Trial counsel failed to adequately seek and present evidence in support of a change of venue so that the strong community sentiment against Mr. Jones and highly prejudicial publicity surrounding the crime and which attended the 1979 trial could be minimized or a fair trial obtained.  In marked contrast to trial counsel for his codefendant, Arthur Lee Giles, trial counsel failed to seek funds which would have allowed him to commission a survey in support of a change of venue.

This claim was raised in the Rule 32 proceedings, in which the Alabama Court of Criminal Appeals found, as to this and several other claims of ineffective assistance, that petitioner failed to offer evidence at the Rule 32 hearing showing either that counsel's decisions were beyond the broad scope of competence expected under the Sixth Amendment or that they prejudiced the defense. Jones v. State, 753 So. 2d 1174, 1199 (Ala. Crim. App.), cert. denied (Ala. 1999).  The state appeals court held, "Jones has not shown 'by a

-87-

preponderance of the evidence the facts necessary to entitle [him] to relief' on any issue concerning the ineffectiveness of his trial counsel."   Because petitioner had an opportunity to prove this claim in state court proceedings, he cannot offer additional evidence in support of the claim in these proceedings without satisfying Section 2254(e)(2)'s conditions.  <u>Michael Williams v. Taylor</u>, 529 U.S. 420, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000); 28 U.S.C. § 2254(e)(2).

Looking to the <u>Strickland</u> standard, the court cannot say that this conclusion is contrary to or an unreasonable application of Supreme Court precedent.  The evidence presented during the Rule 32 hearing failed to show that counsel acted outside the broad scope of competence expected of counsel at the time of the 1982 trial. The murders occurred in 1978.  No evidence was presented during the Rule 32 proceedings to show that there was widespread publicity or public passion when the trial took place four years later, in 1982. Indeed, the many newspaper articles offered by the petitioner at the Rule 32 hearing to prove widespread publicity dated from 1978 and 1979.  At the time of the 1982 trial, there were only a few very short news articles dealing with the trial.  Thus, by 1982, the publicity surrounding the murders and the trial had greatly abated, and there was no other evidence to suggest an aroused public passion about the case.  Even if counsel can be faulted for failing to make a stronger showing on petitioner's motion for

-88-

change of venue, he suffered no prejudice at trial because there was no basis for changing venue. At the time of the 1982 trial, there simply was no wide-spread publicity or public passion about the case. Petitioner is not entitled to relief on this claim.

XIII. Habeas Claim A(13). (Failure to More Adequately Cross-Examine Prosecution Witnesses)-- Paragraph 86 of the petition asserts:

> Trial counsel failed to investigate and adequately cross-examine crucial state witnesses whose testimony had to be challenged to protect Mr. Jones' interest and rights. These witnesses include Tony Nelson, Charlie Nelson, Brenda Nelson and the police officers who took Mr. Jones' confession.

Petitioner's brief in opposition to summary disposition of this case does not address this particular claim; nowhere is there any elaboration on what petitioner contends his trial attorneys did or failed to do in examining these witnesses.[15] Thus, the court is left with nothing more than this bare allegation in the petition. Such vague allegations are insufficient to warrant habeas relief. See Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir. 1978).[16]

---

[15]   Under a discussion of the claim that counsel were ineffective for failing to present the defense that the victims were already dead when petitioner stabbed them, the brief does discuss how the testimony of Brenda Nelson can be read to support such a defense. (Doc. 22, at pp.47-48). There is no discussion, however, regarding counsel's alleged shortcomings in cross-examining Brenda Nelson or any other witness.

[16]   In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding

On appeal from denial of Rule 32 relief, the Alabama Court of Criminal Appeals concluded that petitioner failed to carry his burden of proving either deficient performance by counsel or prejudice on this claim.  Because petitioner had an opportunity to prove this claim in state court proceedings, he cannot offer additional evidence in support of the claim in these proceedings without satisfying Section 2254(e)(2)'s conditions.  <u>Michael Williams v. Taylor</u>, 529 U.S. 420, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000); 28 U.S.C. § 2254(e)(2).

Without more, this court cannot say that the state appellate court's resolution of this claim was contrary to or an unreasonable application of the <u>Strickland</u> standard.  <u>Strickland</u> does not require perfect representation, only constitutionally adequate representation.  The cross-examination of witnesses is an art, not a science, performed in different ways with different philosophies by equally accomplished trial lawyers.  This is particularly true in a case like this, in which counsel were called upon to cross-examine teenagers (Charlie and Brenda Nelson) about the murder of their parents, witnessed when they were but children, and who suffered atrocious and traumatic wounds themselves.  Counsel had to balance delicately the search for truth in their testimony without

---

precedent the decisions of the old Fifth Circuit Court of Appeals rendered before October 1, 1981.

bullying them or otherwise alienating the jury by appearing less than sympathetic to their pain. It would have been entirely reasonable for counsel to avoid being confrontational with these witnesses and to limit cross-examination to "safe" areas, rather than risk angering the jury with a perception of insensitivity to them. Nevertheless, the state appellate court found the record to support the trial court's finding that:

> Boles aggressively attacked the witnesses' versions of events. Counsel impeached Brenda Nelson with prior inconsistent statements that she had made. In fact, counsel had admitted prior inconsistent statements over the objections of the State and prevented the State from admitting into evidence the entirety of her statements.

Jones v. State, 753 So. 2d 1174, 1183 (Ala. Crim. App.), cert. denied, (Ala. 1999). Further, the court found that, "Counsel also vigorously opposed the admission of Jones' confession during the hearing on the motion to suppress and during the testimony of the State's witnesses before the jury." Id. These conclusions are fairly based on the record of the trial.

All of this is to say, simply, that the strategy and tactics of cross-examination cannot be so easily labeled "right" or "wrong," or found wanting after the fact with the benefit of hindsight and second-guessing. Without some clearer showing by petitioner of an error or shortcoming in the cross-examination of witnesses by counsel, an error so egregious that no reasonable attorney would have made it, the court cannot say that counsel was

ineffective or that the resolution of this claim by the state courts is contrary to or an unreasonable application of the Strickland standard.  Petitioner is entitled to no relief on this claim.

XIV. Habeas Claim A(14) (Failure to Object to Improper Comments by the Prosecutor Relating to Petitioner's Right to Remain Silent)-- At paragraph 87 of the petition, it is alleged:

> Trial counsel failed to object to the prosecutor's highly improper closing argument at both the guilt/innocence and sentencing stages.  In particular, trial counsel failed to object to the prosecutor's use of the phrases "blood-thirsty savage" (R. 462) and "blood-thirsty murderer" (id.) and failed to object when the prosecution impermissibly commented on Mr. Jones' right not to take the stand during the guilt phase of the trial.

As is true of the immediately preceding claim, this claim is not addressed by petitioner in his brief, and the court is left with nothing but this bare allegation.  Of course, the claim that counsel was ineffective for failing to object to comments calling petitioner a "blood thirsty savage" and a "blood thirsty murderer" was addressed above under Habeas Claim A(6) and will not be repeated.  The court will focus here on whether counsel was ineffective for failing to object to the prosecutor's comments about petitioner's right not to take the stand to testify.

This same claim was raised in the Rule 32 petition, and the Alabama Court of Criminal Appeals concluded that petitioner failed

-92-

to carry his burden of proving either deficient performance by counsel or prejudice. Because petitioner had an opportunity to prove this claim in state court proceedings, he cannot offer additional evidence in support of the claim in these proceedings without satisfying Section 2254(e)(2)'s conditions. <u>Michael Williams v. Taylor</u>, 529 U.S. 420, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000); 28 U.S.C. § 2254(e)(2).

This court cannot say that such resolution of the claim was contrary to or an unreasonable application of the <u>Strickland</u> standard. The court has carefully reviewed the closing arguments of all counsel in both the guilt and sentencing phases of the trial, and has been unable to identify any argument in which a prosecutor commented on the petitioner's failure to take the stand or his right not to testify. Because it does not appear that any improper comment was made along these lines, counsel were not ineffective for failing to object; there was nothing to object to. Consequently, the resolution of this claim by the Alabama Court of Criminal Appeals is not contrary to or an unreasonable application of Supreme Court precedent. Petitioner is not entitled to relief on this claim.

<u>Ineffective Assistance of Appellate Counsel</u>

At paragraphs 89 through 97 of the petition, it is alleged that petitioner received ineffective assistance from counsel on

appeal, Mr. Boles.  (Habeas Claim B).  Petitioner notes that counsel unsuccessfully asked the trial judge to be relieved of prosecuting the appeal and that the appellate brief he filed was only eight pages.  He argues that this indicated that counsel abdicated his duty to advocate effectively for petitioner on appeal.  He criticizes the three issues raised by counsel on appeal, asserting that a number of constitutional issues could have been raised, but were not.  The only issues identified by petitioner that *should* have been raised on appeal (but were not) are (i) the lack of a jury instruction on intoxication and the lesser included offense of manslaughter; (ii) the failure of the trial court to give an instruction on the particularized intent requirement for a capital murder conviction; and (iii) the trial court's erroneous burden-shifting instruction.  Without a clearer exposition of issues petitioner alleges should have been presented on appeal, the court will restrict its analysis of the ineffective assistance claim to these issues.  Otherwise, vague claims are insufficient to warrant habeas relief.  Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir. 1978).

Claims for ineffective assistance of appellate counsel are analyzed under the same Strickland standard as is applicable to trial ineffectiveness.  Johnson v. Alabama, 256 F.3d 1156 (11th Cir. 2001); Clark v. Crosby, 335 F.3d 1303 (11th Cir. 2003).  In Johnson. the court of appeals observed:

-94-

It is difficult to win a <u>Strickland</u> claim on the grounds that appellate counsel pressed the wrong legal arguments where the arguments actually pursued were reasonable in the circumstances.  We have emphasized that even in a death penalty case, counsel must be "highly selective about the issues to be argued on appeal...." <u>United States v. Battle</u>, 163 F.3d 1, 1 (11th Cir. 1998).  The district court, having considered the record and [counsel's] testimony during the state post-conviction proceeding, found that [counsel] had carefully considered many of the claims now raised in appeal, but ultimately chose to pursue the claims he felt were most likely to prevail and winnow out the arguments he thought were less persuasive.

<u>Id.</u> at 1188.  Thus, keeping in mind the presumption of reasonableness favoring the decisions of counsel, a claim of ineffective assistance of appellate counsel will fail unless the petitioner can establish that counsel's choice of issues to raise on appeal was unreasonable under the circumstances.  The fact that potentially meritorious issues were not raised on appeal does not establish, by itself, ineffectiveness.  Rather, the court must assess whether any reasonable attorney would have chosen the issues raised in lieu of the omitted issues.  If so, counsel's choice of issues cannot be second-guessed.  Likewise, issues lacking merit cannot establish the requisite prejudice under the <u>Strickland</u> standard.

Turning to the facts of this particular case, petitioner contends that appellate counsel was ineffective because he chose to raise issues lacking any apparent merit while ignoring others more likely to succeed on appeal.  Petitioner claims that his appellate

lawyer should have argued three particular issues[17] on appeal, rather than the ones he chose.

Petitioner raised this claim in the Rule 32 petition and it was explored at the evidentiary hearings on that petition.  On appeal from denial of Rule 32 relief, the Alabama Court of Criminal Appeals concluded:

> Jones contends that his appellate counsel, who was the same counsel who represented him at trial, rendered ineffective assistance.  Jones claims that his appellate counsel failed to "recognize at least some of the real grounds for an effective appeal." (Appellant's brief at p. 43.)   Specifically, he argues that his appellate counsel should have raised the following issues:
>
>> 1.   The failure to give a jury charge on intoxication and on the lesser included offense of manslaughter;
>> 2.   The trial court's omission of the required particularized intent instruction; and
>> 3.   The trial court's erroneous burden-shifting instruction.
>
> However, because we have addressed these issues in light of Jones's claim of ineffective assistance of trial counsel and found that they did not constitute reversible

---

[17]   Although petitioner contends that counsel overlooked a multitude of meritorious issues, he explicitly identifies only three: (i) the lack of a jury instruction on intoxication and the lesser included offense of manslaughter; (ii) the failure of the trial court to give an instruction on the particularized intent requirement for a capital murder conviction; and (iii) the trial court's erroneous burden-shifting instruction.   Because the Strickland standard requires a habeas petitioner to identify the particular error or shortcoming of counsel, the court will consider the ineffectiveness claim only within the context of whether the failure to assert these three issues was unreasonable.   The court has no way of assessing the reasonableness of not presenting other, unidentified claims.

-96-

error, Jones's appellate counsel cannot be held to be ineffective for failing to argue these issues on appeal. Moreover, at the conclusion of our affirmance of Jones's direct appeal, we stated: "In accordance with Rule 45A, Ala.R.App.P., we have carefully reviewed the record for any errors which would have adversely affected the rights of the appellant and found none." *Jones v. State,* 520 So.2d at 549.   While we acknowledge that Jones's appellate counsel may have made decisions that Jones now questions, we do not find that Jones's appellate counsel was ineffective.

Jones v. State, 753 So. 2d 1174, 1199-1200 (Ala. Crim. App.), cert. denied, (Ala. 1999).  This conclusion is entitled to a presumption of correctness under 28 U.S.C. § 2254(d), as discussed above, unless petitioner can show that it is "contrary to or an unreasonable application of" the Strickland standard.

This court agrees with the Alabama Court of Criminal Appeals that counsel was not ineffective for failing to raise these particular issues on direct appeal.  As that court noted and this court has further explained, none of these three issues was meritorious.    Counsel's decision to forego raising the intoxication/lesser-included manslaughter issue was reasonable. The evidence of voluntary intoxication was not great enough to warrant a finding that petitioner was incapable of forming the necessary intent to commit a capital crime.  His clear recollection of the events, recounted in the statement he made to police, belies a level of intoxication profound enough to prevent him from forming an intent to commit these murders.  Given the uncertain potential

of the claim, it was not unreasonable for counsel to elect not to pursue it as an appellate issue.

Likewise, the two other issues identified by petitioner did not have sufficient merit to be critical of counsel for failing to argue them on appeal. This court has discussed at length above how neither of these claims constituted error by the trial court, a conclusion found explicitly by the Alabama Court of Criminal Appeals. Because there was no error in the trial court's jury instruction, there was no ground on which appellate counsel could make an appeal issue. His failure to do so, even if not the product of a strategic choice, caused no prejudice to the defense; consequently, there was no ineffective assistance of appellate counsel warranting the issuance of the writ.

Because the conclusion of the Alabama Court of Criminal Appeals, that there was no ineffectiveness because there was no error in the challenged instructions, was not "contrary to" or an "unreasonable application of" the Strickland standard, it is entitled to a presumption of correctness under § 2254(d). The court is precluded from granting habeas relief by the express terms of AEDPA under these circumstances. This claim, therefore, is due to be denied.

<u>Consideration of Mitigating Circumstances</u>

At Habeas Claim C, paragraphs 98 and 99, petitioner alleges that the state trial and appellate courts failed to consider adequately both statutory and non-statutory mitigating circumstances.  Paragraph 98 reads:

> The Circuit Court found no mitigating circumstances to exist in this case.  There were clearly mitigating circumstances evident from the record.  Nevertheless, the Alabama appellate courts found appropriate the trial court's refusal to find mitigating circumstances.  The Circuit Court and the Alabama appellate court failed to adequately consider both statutory and non-statutory mitigating circumstances.  The Circuit Court and the Alabama appellate courts put undue importance on statutory mitigating circumstances only instead of considering Mr. Jones' particular mitigating circumstances.  This was in violation of Mr. Jones' Eight and Fourteenth Amendment rights.

Paragraph 99 argues that, to the extent the State contends this claim is procedurally defaulted, petitioner alleges that ineffective assistance of trial and appellate counsel constitutes "cause and prejudice" sufficient to excuse the default.

This claim was pled as claim E in the Rule 32 petition, and the Alabama Court of Criminal Appeals found that it was procedurally defaulted because it *was raised* at trial and on direct appeal.  <u>Jones v. State</u>, 753 So. 2d 1174, 1205 (Ala. Crim. App.), <u>cert. denied</u>, (Ala. 1999).[18]  Aside from the somewhat odd notion

---

[18]    In its published Rule 32 opinion, the Court of Criminal Appeals wrote:

that petitioner could raise in the trial court a claim that the
state *appellate* courts failed to consider mitigating evidence, the
claim appears to be exhausted[19] and ripe for consideration by this
court.

The direct appeal of this case makes clear that both the trial
and appellate court adequately and fairly considered the mitigating
circumstances existing in the record at the time sentence was
imposed.  It must be remembered that much of what petitioner now
presents as mitigating evidence--his mental health history and his
abusive childhood--was not presented to the trial court or argued

---

We find that the following claims in Jones's [sic]
petition are procedurally barred under Rules 32.2(a)(2)
and (4), Ala.R.Crim.P., because they were raised and
addressed at trial and on direct appeal:

* * *

2.  Jones's [sic] claim that the trial court's and
appellate court's failure to consider mitigating evidence
that was clear from the record violated Alabama law and
his rights under the Eighth and Fourteenth Amendments to
the United States Constitution. *Jones v. State*, 520 So.
2d at 555.


[19]   Even though the Alabama Court of Criminal Appeals
concluded that the claim was procedurally defaulted, the nature of
the default does not preclude this court from considering the claim
on the merits.  The state court found that the claim could not be
considered in the Rule 32 proceedings because it had been raised
and addressed on direct appeal.  This, of course, necessarily means
that the claim also was exhausted for habeas purposes.  Once a
claim has been exhausted on direct appeal, it need not be exhausted
a second time in a post-conviction petition.

on appeal.  As discussed above, counsel chose to focus their
penalty phase arguments on the assertion that petitioner was
coerced into the crime by his co-defendant, Giles, and on a
lingering doubt about whether the victims were already dead when
petitioner stabbed them.  These factors, as well as petitioner's
intoxication, were considered as potential mitigation, but found
insufficient to overcome the aggravating circumstances of the
crime.  Upon remand from the Alabama Court of Criminal Appeals, the
trial court wrote the following:

> This case was remanded by the Court of Criminal Appeals
> with instructions and directions to the trial Court to
> extend its sentencing order heretofore entered on
> December 28, 1982.
>
> The Court hereby extends said order as follows:
>
> The Court found aggravating circumstances as follows:
>
> (1) The defendant was previously convicted of a felony
> involving violence to the person;
>
> (2) The defendant knowingly created a great risk of death
> to many persons;
>
> (3) The capital offense was committed while the defendant
> was engaged or was an accomplice in the commission of, or
> in an attempt to commit robbery;
>
> (4) The capital felony was especially heinous, atrocious
> or cruel.
>
> The Court having considered all the statutory mitigating
> circumstances under *Alabama Code,* 13A-5-51, and any
> additional mitigating evidence offered and further after
> consideration of all the matters that were presented to
> the Court during any of the hearings both in mitigation
> and by aggravation, and taking into consideration all
> matters that were properly before the Court as

-101-

hereinabove stated, this Court finds and is convinced
beyond a reasonable doubt and to a moral certainty that
no mitigating circumstances exist.

That no mitigating circumstance exist to outweigh the
unlawful, intentional and malicious killing of Carl
Nelson and Willene Nelson by shooting them with a pistol
or cutting them with a knife, and that the aggravating
circumstances are sufficient to uphold the jury's
verdict.

Jones v. State, 520 So. 2d 543, 552-53 (Ala. Crim. App. 1985),

aff'd, 520 So. 2d 553 (Ala. 1988).  On return to remand, following

these findings by the trial court, the Alabama Court of Criminal

Appeals held:

We have also independently weighed the aggravating and
mitigating circumstances in this case and we are
convinced that, without a doubt, the death penalty was a
proper sentence.  The facts of the capital offense are
especially heinous, atrocious and cruel.  The victims of
appellant's execrable crime were not only shot several
times by appellant's partner, but they were barbarously
and ferociously stabbed numerous times by both the
assailants and two of the victims died as a result of the
injuries inflicted.

The facts indicate that appellant's previous felony
conviction was for a crime in which he was only an
accomplice;  nevertheless, a jury heard the evidence
against the appellant and convicted him of murder in the
second degree and subsequent to that conviction he pled
guilty to assault.  The sentence he received for the
prior conviction and guilty plea were served
concurrently. Thus, the prior convictions were properly
considered by the trial judge in assessing appellant's
proper punishment in the case at bar.  There is no
concrete evidence to support the proposition that
appellant was under extreme mental and emotional stress
during the criminal actions.  Nor can we give any
credence to the belief that the appellant was a mere
bystander or accomplice in the massacre of the victims,
and that his involvement was relatively minor. Any
additional statutory or non-statutory mitigating

-102-

> circumstances are not present in this case. Consequently, we find that any mitigating circumstances, if they exist at all, do not outweigh the aggravating circumstances present in this case.

Jones v. State, 520 So. 2d 543, 550 (Ala. Crim. App. 1985), aff'd, 520 So. 2d. 553 (Ala. 1988).

On direct appeal, the Alabama Supreme Court also addressed the argument that the trial court failed adequately to consider mitigating evidence. It wrote:

> Jones's [sic] final argument is likewise ill-founded. He claims that the circuit judge ignored the mitigating factors surrounding the crime and pointed out only aggravating factors in his sentencing order on remand. The circuit judge found that the aggravating circumstances were:
>
> > 1. The defendant was previously convicted of a felony involving violence to the person;
> >
> > 2. The defendant knowingly created a great risk of death to many persons;
> >
> > 3. The capital offense was committed while the defendant was engaged or was an accomplice in the commission of, or in an attempt to commit robbery;
> >
> > 4. The capital felony was especially heinous, atrocious or cruel.
>
> After reviewing the evidence, the circuit judge concluded that there were no mitigating factors to be considered in sentencing. Jones claims that he was intoxicated at the time and that the other culprit involved, Arthur Giles, made him do it. Although Charlie Nelson, a victim of the crime who was 11 years old at the time, testified that he thought Jones was intoxicated and that he heard Arthur Giles tell Jones what to do, we find that it was not improper for the trial court to conclude that these did not constitute mitigating factors under the circumstances. Ala.Code 1975, § 13-11-7, sets out the

-103-

statutory mitigating circumstances to be considered by the judge in sentencing. [Footnote omitted] The judge considered these factors and found none of them applicable in this case.  In reviewing the record, he found no other factors that would weigh against the four aggravating circumstances.  He concluded that the evidence was sufficient to uphold the jury verdict and imposed a sentence of death.

Having considered the petition, the briefs, the opinion below, and the record itself, we are of the opinion that the judgment of the Court of Criminal Appeals is due to be, and it is hereby, affirmed.

Ex parte Jones, 520 So.2d 553, 555 (Ala. 1988).

The claim now before the court is that the trial and appellate courts failed to consider adequately evidence of mitigation that was apparent in the record.  The above-recited history of the direct appeal refutes the claim.  The Alabama Court of Criminal Appeals remanded the case to the trial court for the very purpose of requiring the trial court to consider and address the aggravating and mitigating circumstances in the case.  The trial court did so, and the Court of Criminal Appeals independently addressed them after remand.  Finally, the Alabama Supreme Court also considered whether petitioner's intoxication or his deference to Giles were, in fact, mitigating circumstances.  Plainly, the trial and appellate courts adequately considered the evidence presented, but concluded simply that the evidence did not establish mitigating circumstances.

To the extent this claim is intended to raise the issue that the state courts erred in concluding that this evidence did not

-104-

establish mitigating circumstances, petitioner is not entitled to habeas relief on this claim under § 2254(d) unless the conclusion reached by the state courts was contrary to or an unreasonable application of Supreme Court precedent.  Petitioner has not pointed the court to any Supreme Court precedent, and the court has found none, holding that intoxication similar to that in this case constitutes a mitigating circumstance, or that similar deference to a co-defendant is a mitigating circumstance.[20]  The conclusion reached by the state courts, therefore, was not objectively unreasonable.  The evidence indicated that petitioner was not so intoxicated that he did not know what he was doing; indeed, he was sober enough to recall and relate his actions later.  Nor does the evidence establish that petitioner was incapable of making his own voluntary choice of participating in this crime; his will was not overborne by Giles.  Thus, it cannot be said that the resolution reached by the state courts was either contrary to or an unreasonable application of Supreme Court precedent.  This claim is due to be denied.

---

[20]  Again it should be remembered that no evidence was presented to the state courts concerning defendant's mental health or his allegedly abusive childhood.

-105-

<u>Procedurally Defaulted Claims</u>

It is clear that certain claims asserted here are procedurally defaulted.  Specifically, all or portions of habeas claims D, E, F, G, and H are defaulted and cannot be considered on their merits absent a showing of "cause and prejudice" or that a "fundamental miscarriage of justice" will occur if they are not considered.

Procedural default is the manner in which the habeas requirement of exhaustion of state remedies is enforced.  <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001)("The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine").  Before a federal habeas court may consider the merits of a claim, the state courts first must be given the opportunity to address and cure any constitutional defect that may exist in the conviction or sentence.  The United States Court of Appeals for the Eleventh Circuit has stated:

> The federal courts' authority to review state court criminal convictions pursuant to writs of habeas corpus is severely restricted when a petitioner has failed to follow applicable state procedural rules in raising a claim, that is, where the claim is procedurally defaulted.  Federal review of a petitioner's claim is barred by the procedural default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, <u>Harris v. Reed</u>, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed. 2d 308 (1989), and that bar provides an adequate and independent state ground for denying relief.  <u>See</u> <u>id</u>. at 262, 109 S. Ct. at 1042-43; <u>Johnson v. Mississippi</u>, 486 U.S. 578, 587, 108 S. Ct. 1981, 1987, 100 L. Ed. 2d 575 (1988).  The doctrine serves to ensure petitioners will first seek relief in accordance with state procedures, <u>see</u> <u>Presnell v. Kemp</u>, 835 F.2d 1567,

> 1578-79 (11th Cir. 1988), cert. denied, 488 U.S. 1050,
> 109 S. Ct. 882, 102 L. Ed. 2d 1004 (1989), and to "lessen
> the injury to a State that results through reexamination
> of a state conviction on a ground that a State did not
> have the opportunity to address at a prior, appropriate
> time." McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454,
> 1470, 113 L.Ed. 2d 517 (1991).

Johnson v. Singletary, 938 F.2d 1166, 1173 (11th Cir. 1991); see also Bailey v. Nagle, 172 F.3d 1299, 1302 (11th Cir. 1999)("A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default").  Thus, if a claim has been presented in some form previously to a state court, a federal habeas court may refuse to hear that claim only if the last state court rendering the judgment "'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 103 L. Ed. 2d 308, 317 (1989).  The stated bar also must be "independent and adequate," as determined under federal law. See Lee v. Kemna, 534 U.S. 362, 376, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002)("There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question."); Johnson v. Mississippi, 486 U.S. 578, 587, 108 S. Ct. 1981, 1987, 100 L. Ed. 2d 575 (1988).

A claim may be procedurally defaulted in at least two ways: first, when the claim is presented to the state courts in a way

that does not comport with state procedural rules, and, second,
when the claim has never been presented to the state courts and has
become barred from being presented by state procedural rules.
Again, the Eleventh Circuit has explained:

> Such procedural default can arise in two ways. First,
> where the state court correctly applies a procedural
> default principle of state law to arrive at the
> conclusion that the petitioner's federal claims are
> barred, Sykes requires the federal court to respect the
> state court's decision. Atkins v. Singletary, 965 F.2d
> 952, 956 (11th Cir .1992), cert. denied, 515 U.S. 1165,
> 115 S.Ct. 2624, 132 L.Ed. 2d 865 (1995); Meagher v.
> Dugger, 861 F.2d 1242, 1245 (11th Cir. 1988). Second, if
> the petitioner simply never raised a claim in state
> court, and it is obvious that the unexhausted claim would
> now be procedurally barred due to a state-law procedural
> default, the federal court may foreclose the petitioner's
> filing in state court; the exhaustion requirement and
> procedural default principles combine to mandate
> dismissal. Snowden v. Singletary, 135 F.3d 732, 737
> (11th Cir.), cert. denied, 525 U.S. 963, 119 S.Ct. 405,
> 142 L.Ed. 2d 329 (1998); see also 28 U.S.C.
> § 2254(b)(1)(A)(1994)(pre-AEDPA) ("An application for
> writ of habeas corpus ... shall not be granted unless it
> appears that the applicant has exhausted the remedies
> available in the courts of the State....").

Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999); see Smith
v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001)("If the petitioner
has failed to exhaust state remedies that are no longer available,
that failure is a procedural default which will bar federal habeas
relief, unless either the cause and prejudice or the fundamental
miscarriage of justice exception is established."). Consequently,
the habeas court is required to determine not only how claims
presented to the state court were treated by those courts, but also

-108-

to tag those claims asserted in the habeas action that were never alleged during state proceedings.

If it is determined that a claim was procedurally defaulted in state court, the petitioner may obtain review of the claim in habeas corpus only by showing "cause and prejudice" to excuse the default, Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982); Wainwright v. Sykes, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), or by showing that refusal to consider the claim will result in a "fundamental miscarriage of justice." Smith v. Murray, 477 U.S. 527, 537-38, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986). The "cause and prejudice" test of Engle v. Isaac and Wainwright v. Sykes is in the conjunctive; therefore, petitioner must prove both cause and prejudice.

The United States Supreme Court summarized the "cause" prong of the standard in the following manner:

> In Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), this Court adopted the "cause and prejudice" requirement of Francis v. Henderson, supra, for all petitioners seeking federal habeas relief on constitutional claims defaulted in state court. The Sykes Court did not elaborate upon this requirement, but rather left open "for resolution in future decisions the precise definition of the 'cause'-and-'prejudice' standard." 433 U.S., at 87, 97 S.Ct., at 2507. Although more recent decisions likewise have not attempted to establish conclusively the contours of the standard, they offer some helpful guidance on the question of cause. In Reed v. Ross, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), the Court explained that although a "tactical" or "intentional" decision to forego a procedural opportunity normally cannot constitute cause, id., at 13-14, 104 S.Ct., at 2909, "the failure of counsel to raise a

> constitutional issue reasonably unknown to him is one
> situation in which the [cause] requirement is met." <u>Id.</u>,
> at 14, 104 S.Ct., at 2909.  The Court later elaborated
> upon <u>Ross</u> and stated that "the existence of cause for a
> procedural default must ordinarily turn on whether the
> prisoner can show that some objective factor external to
> the defense impeded counsel's efforts to comply with the
> State's procedural rule." <u>Murray v. Carrier</u>, 477 U.S.
> 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986).
> We explained that "a showing that the factual or legal
> basis for a claim was not reasonably available to
> counsel, ... would constitute cause under this standard."
> <u>Ibid</u>. (Citations omitted.)

<u>Amadeo v. Zant</u>, 486 U.S. 214, 221-22, 108 S. Ct. 1771, 100 L. Ed.
2d 249 (1988).

The petitioner also must demonstrate that he was prejudiced;
he must show "not merely that the errors ... created a *possibility*
of prejudice, but that they worked to his *actual* and substantial
disadvantage, infecting his entire trial with error of
constitutional dimensions."  <u>United States v. Frady</u>, 456 U.S. 152,
170, 102 S.Ct. 1584, 71 L.Ed. 2d 816 (1982)(emphasis in original).

A federal habeas court will consider a procedurally defaulted
claim on one additional basis in the absence of a showing of "cause
and prejudice": if a "fundamental miscarriage of justice" has
"probably resulted in the conviction of one who is actually
innocent." <u>Smith v. Murray</u>, 477 U.S. 527, 537-38, 106 S. Ct. 2661,
91 L. Ed. 2d 434 (1986)(quoting, respectively, <u>Engle</u>, 456 U.S. at
135, and <u>Murray</u>, 477 U.S. at 496).  This exception requires a
showing of innocence of the fact of the crime, not merely "legal"
innocence.  The burden rests on the petitioner to come forward with

-110-

evidence tending to establish a colorable claim of *actual* innocence. <u>Isaacs v. Head</u>, 300 F.3d 1232, 1255 (11th Cir. 2002)("In order to show the type of 'miscarriage of justice' that will excuse a procedural bar, a petitioner must make 'a colorable showing of actual innocence.'"(quoting <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1305 (11th Cir. 1999))); <u>see also</u> <u>Crawford v. Head</u>, 311 F.3d 1288 (11th Cir. 2002); <u>see generally</u> <u>Herrera v. Collins</u>, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed. 2d 203 (1993); <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed. 2d 364 (1986).

I. Habeas Claim D (Failure to Hold Competency Hearing)--At paragraphs 100 through 106 of the habeas petition, petitioner contends that the trial court erred by failing to hold a hearing on his competency to stand trial under <u>Alabama Code</u> § 15-16-21 (1975) and by accepting a competency report from a Dr. Seger, whom petitioner contends has used "bogus credentials." First, it is not at all clear that this claim asserts a violation of the petitioner's *federal* constitutional rights. Habeas relief lies only to correct errors substantially affecting *federal* rights. To the extent petitioner contends only that an error of state law occurred, habeas relief is not available to correct it. <u>Dugger v. Adams</u>, 489 U.S. 401, 409-10, 109 S. Ct. 1211, 103 L. Ed. 2d 435 (1989)("It is clear that 'mere errors of state law are not the concern of this Court unless they rise for some other reason to the

level of a denial of rights protected by the United States Constitution.'"(quoting <u>Barclay v. Florida</u>, 463 U.S. 939, 957-958, 103 S. Ct. 3418, 3428-3429, 77 L. Ed. 2d 1134 (1983))).

Assuming, however, that this claim alleges a violation of federal law regarding the right to a hearing on the petitioner's competency to stand trial, <u>see</u> <u>Pate v. Robinson</u>, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed.2d 815 (1966); <u>James v. Singletary</u>, 957 F.2d 1562 (11th Cir. 1992), it was never raised at trial or on direct appeal from conviction.  Although petitioner asserted this claim in his Rule 32 petition (<u>see</u> Tab-40, p. 25), the Alabama Court of Criminal Appeals found it to be procedurally defaulted because it was not raised at trial or on direct appeal. <u>Jones v. State</u>, 753, So. 2d 1174, 1205 (Ala. Crim. App.), <u>cert. denied</u>, (Ala. 1999). Without a showing of "cause and prejudice" to excuse the default, this court cannot grant habeas relief on the claim.

Petitioner has not shown cause and prejudice to excuse the default, even though he argues that he received ineffective assistance of trial and appellate counsel for the very reason that they failed to raise this claim. (<u>See</u> Petition, ¶ 106).  Although ineffective assistance of counsel can constitute adequate "cause" under the cause and prejudice standard, it must be pled and proven as an independent ground for habeas relief.  The Supreme Court recently reiterated that ineffective assistance as cause under the cause and prejudice standard must itself rise to the level of a

constitutional violation.   In <u>Edwards v. Carpenter</u>, 529 U.S. 446,

120 S.Ct. 1587, 146 L.Ed. 2d 518 (2000), the Court wrote:

> Not just any deficiency in counsel's performance will do,
> however; the assistance must have been so ineffective as
> to violate the Federal Constitution.  *Ibid.*  In other
> words, ineffective assistance adequate to establish cause
> for the procedural default of some *other* constitutional
> claim is *itself* an independent constitutional claim.

<u>Id.</u> at 451; <u>see</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 106 S. Ct. 2639,

91 L. Ed. 2d 397 (1986); <u>Eagle v. Linahan</u>, 279 F.3d 926, 937 (11th

Cir. 2001)("[A]ttorney error is cause for procedural default only

if the error rises to the level of constitutionally deficient

assistance of counsel under the Sixth Amendment.").   Further, the

claim of ineffectiveness-as-cause[21] must be both exhausted and not

procedurally defaulted in state court.  <u>Edwards v. Carpenter</u>, 529

U.S. 446, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000); <u>Hill v. Jones</u>,

81 F.3d 1015 (11th Cir. 1996).   Petitioner has not alleged as an

independent claim for relief in this action that he received

ineffective assistance due to counsel's failure to assert this

argument at trial and on direct appeal.   Although petitioner

asserted the claim of ineffective assistance of appellate counsel,

setting out three particular claims he argues counsel should have

---

[21]   The term "ineffectiveness-as-cause" is used here to
describe a claim of ineffective assistance of counsel pled for the
purpose of establishing "cause" to excuse a procedural default
under the "cause and prejudice" standard of <u>Engle v. Isaac</u>, 456
U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982), and <u>Wainwright
v. Sykes</u>, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).

pursued on appeal, the claim that the court failed to conduct a competency hearing was not one of them.  Nor was such a claim of ineffectiveness asserted and exhausted as a free-standing ground for Rule 32 relief.  By failing to so assert it in the Rule 32 petition, it was not exhausted and is now defaulted under the time bar provision of Rule 32.2(c).  Consequently, this particular claim of ineffective assistance also has been procedurally defaulted and cannot now serve as cause in this action.  <u>Edwards v. Carpenter</u>, 529 U.S. 446, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000); <u>Hill v. Jones</u>, 81 F.3d 1015 (11th Cir. 1996).

Although it may be argued that petitioner was unaware of Dr. Seger's allegedly "bogus credentials," that alone would not excuse his failure to raise the issue on direct appeal or during the Rule 32 proceedings.  The constitutional right at stake was the right to a <u>Pate</u> hearing, the purpose of which would have been to put before the trial court all evidence relevant to petitioner's competency to stand trial, including that tending to undermine the credibility of experts offering an opinion on the subject.  Thus, petitioner was fully aware of the right at stake and its alleged violation as early as the time of trial, yet the failure of the trial court to hold a <u>Pate</u> hearing was never raised at trial or on direct appeal. Whether or not counsel's failure to raise the claim at trial and on direct appeal constituted ineffective assistance, such a claim of ineffectiveness has not been presented to the state courts.

Because it is now defaulted also, it cannot serve as "cause" to rescue this substantive claim from the procedural default doctrine. This claim, therefore, is procedurally defaulted and cannot support habeas relief.

II.  Habeas Claim E (Insufficient Evidence of Intent to Kill)- Petitioner's Claim E asserts that the evidence at trial was insufficient to establish his intent to kill anyone, a necessary element for a capital conviction supporting a death sentence. Although raised in the Rule 32 petition, the Alabama Court of Criminal Appeals found it to be defaulted because it was not raised at trial or as error on direct appeal. Jones v. State, 753, So. 2d 1174, 1205 (Ala. Crim. App.), cert. denied, (Ala. 1999).  Again, petitioner contends that the "cause" excusing his default lies in the alleged ineffective assistance of his trial and appellate counsel, but again he did not allege this form of ineffective assistance of counsel as a basis for relief either in this habeas petition or the Rule 32 petition.  Although he did allege as a ground for relief in the Rule 32 petition that the evidence of a specific intent to kill was insufficient, he did not allege that trial and appellate counsel were ineffective because they failed to raise the issue at trial and on appeal.  Alleging one does not plead the other because a claim of ineffective assistance is distinct from a claim alleging the underlying error. Bailey v.

<u>Nagle</u>, 172 F.3d 1299, 1304 n.8 (11th Cir. 1999)("An ineffective-assistance claim is analytically distinct from the substantive claim underlying it.").

Petitioner did claim that his attorneys were ineffective because they failed to investigate and prove that petitioner did not kill the victims. This claim is premised on the theory that, although petitioner was present at the killings by his co-defendant and even stabbed the victims, they were already dead when he did so. It is not at all clear, however, that this version of alleged ineffectiveness is the same as alleging that counsel failed to argue there was insufficient evidence of specific intent to kill. Petitioner repeatedly emphasizes that, at the time of the killings, he was intoxicated and under the influence of narcotics to such an extent that he was incapable of forming an intent to kill. This argument is different from the assertion that the victims were killed by petitioner's co-defendant. The claim of insufficient evidence of intent to kill, while closely related to the claim that the victims were killed by another, focuses not on whether the victims were alive or dead when he stabbed them, but on petitioner's own state of mind — that is, whether he was capable of and did form the specific intent to kill. Thus, alleging that counsel were ineffective for failing to argue that the victims were dead when stabbed is not the same as alleging ineffective assistance due to counsel's failure to raise the lack of evidence

of petitioner's ability to form the intent to kill.  Because the
petitioner alleged the former, which would not preserve the
"ineffectiveness-as-cause" for the claim that the evidence of
intent to kill was lacking, there is no "cause" under the "cause
and prejudice" standard excusing the default of the insufficiency
claim.

Assuming, alternatively, that petitioner adequately pled
"ineffectiveness-as-cause" to excuse the default of the claim that
the evidence of a specific intent to kill was lacking, the Alabama
Court of Criminal Appeals addressed the question of petitioner's
intent in its discussion of the claim that counsel were ineffective
in choosing not to assert the defense that petitioner was not
involved in the actual killing of the victims.  Rejecting the
notion that petitioner was not actively involved, the Court of
Criminal Appeals said, "Nor can we give any credence to the belief
that the appellant was a mere bystander or accomplice in the
massacre of the victims, and that his involvement was relatively
minor."  The court found the evidence of his participation in the
killings more than adequate, and that counsel were not ineffective
in investigating and then foregoing the defense that petitioner
lacked the intent to kill.  That conclusion is entitled to
deference under § 2254(d) of the Antiterrorism and Effective Death
Penalty Act of 1996 ("AEDPA").  The finding that there was
sufficient evidence of an intent to kill by petitioner is not

-117-

contrary to or an unreasonable application of Supreme Court precedent. The claim for relief on this ground must be denied.

III. Habeas Claim F (Pattern of Racial Bias)-- Fairly read, petitioner appears to be asserting in this claim one similar to that in McClesky v. Kemp, 481 U.S. 279, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987), that the death penalty imposed in his case was the product of racial bias. He alleges in conclusory terms that the victims were white, that he is black, and that he was tried and convicted in a predominantly white community. From this, he concludes that his conviction and death sentence are racially tainted.

Petitioner raised this claim for the first time in his Rule 32 petition, alleging that the death penalty in Alabama is arbitrarily and capriciously applied on the basis of race, in violation of the Eighth and Fourteenth Amendments. The Alabama Court of Criminal Appeals found that this claim was procedurally defaulted because it was not raised at trial or on direct appeal. Jones v. State, 753 So. 2d 1174, 1205 (Ala. Crim. App.), cert. denied, (Ala. 1999). It certainly would be the type of claim that could and should be raised by way of a motion for new trial and dealt with on direct appeal. Thus, the claim is procedurally defaulted from review in this court, unless petitioner can show cause and prejudice to excuse the default.

-118-

Petitioner argues, as he did on the earlier claims for relief, that his trial and appellate lawyers rendered ineffective assistance, and such is the "cause" for default of this claim at trial and on direct appeal.  To establish ineffectiveness-as-cause, petitioner must show that he has exhausted this claim of ineffective assistance and that it is a meritorious claim, warranting relief. Edwards v. Carpenter, 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed. 2d 518 (2000); Hill v. Jones, 81 F.3d 1015 (11ᵗʰ Cir. 1996)  It does not appear, however, that petitioner asserted this specific claim of ineffective assistance during his Rule 32 proceedings, leaving it unexhausted and procedurally defaulted. Although petitioner asserted multiple claims of ineffective assistance, the one closest to this claim is the allegation that his attorneys were ineffective because they failed to investigate the racial composition of Blount County.  This fails to bring to the attention of the state courts adequately the potential allegation that counsel were ineffective because they failed to challenge the conviction and sentence on the specific ground that it was the product of a pattern of racial bias.  Thus, the Rule 32 proceedings did not consider whether counsel were ineffective because they failed to raise a McClesky challenge; consequently, ineffective-assistance cannot be shown as "cause" to excuse the default of the racial-bias claim.

Even if the court could conclude that this particular form of ineffective assistance was presented to the Rule 32 court by petitioner's allegation that counsel should have investigated the racial composition of Blount County, the Alabama Court of Criminal appeals considered this claim on the merits and rejected it in the Rule 32 proceedings.  Jones v. State, 753 So. 2d 1174, 1198-99 (Ala. Crim. App.), cert. denied, (Ala. 1999).  Under § 2254(d), this finding is entitled to a presumption of correctness because it is neither contrary to nor an unreasonable application of Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  Because counsel were not ineffective in this regard, there is no ineffectiveness-as-cause to excuse the procedural default of petitioner's McClesky claim.

Finally, and perhaps more fundamentally, the petitioner has failed to present any evidence adequately establishing either a pattern of racial bias or that it actually tainted the verdicts in his case.  As the Supreme Court said in McClesky:

> Our analysis begins with the basic principle that a defendant who alleges an equal protection violation has the burden of proving "the existence of purposeful discrimination." Whitus v. Georgia, 385 U.S. 545, 550, 87 S.Ct. 643, 646, 17 L.Ed. 2d 599 (1967). [Footnote omitted] A corollary to this principle is that a criminal defendant must prove that the purposeful discrimination "had a discriminatory effect" on him. Wayte v. United States, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985). Thus, to prevail under the Equal Protection Clause, McCleskey must prove that the decisionmakers in *his* case acted with discriminatory purpose. [Italic in original].

-120-

McCleskey v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262, 294 (1987). That evidence of a direct impact on *his* case is lacking. This claim is due to be denied.

IV. Habeas Claim G (Proportionality Review on Appeal)-- At paragraphs 115 through 119 of the Petition, petitioner alleges that the practice of Alabama appellate courts of limiting death-penalty proportionality review to other death-sentenced cases only (as distinct from also considering similar cases in which death was not imposed), fails to assure an evenhanded and non-arbitrary application of the death penalty because it fails to take into account similar cases in which the death penalty was *not* imposed. The Alabama Court of Criminal Appeals found in the Rule 32 proceedings that this claim was procedurally defaulted because it was not raised at trial or on direct appeal. Jones v. State, 753 So. 2d 1174, 1205 (Ala. Crim. App.), cert. denied, (Ala. 1999).[22]

---

[22] As with an earlier claim, it seems odd to find a claim procedurally defaulted because it was not raised on direct appeal when the essence of the claim is a challenge to what happened on appeal, viz., the failure of the appellate court to perform an adequate proportionality review. It would seem more reasonable to present a proportionality challenge in a post-conviction petition, such as a Rule 32 petition. Only after the appeal is complete can the fact of the inadequate proportionality review be known. For this reason, the court doubts that the claim actually is procedurally defaulted.

Petitioner argues, as he did on earlier claims for relief, that his trial and appellate lawyers rendered ineffective assistance, and such is the "cause" for default of this claim at trial and on direct appeal. To establish ineffectiveness-as-cause, petitioner must show that he has exhausted this claim of ineffective assistance and that it is a meritorious claim, warranting relief. Edwards v. Carpenter, 529 U.S. 446, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000); Hill v. Jones, 81 F.3d 1015 (11th Cir. 1996). It does not appear, however, that petitioner asserted this specific claim of ineffective assistance during his Rule 32 proceedings, leaving it unexhausted and procedurally defaulted. A claim of ineffective assistance by appellate counsel that was pled in the Rule 32 petition alleged that counsel failed to object to the absence of meaningful appellate review of death sentences. While this claim vaguely upbraids counsel for failing to challenge inadequacies in the appellate-review process, it does not specifically raise the point that counsel missed the issue of the courts' proportionality review being insufficient because it fails to take into account non-death sentenced cases. Thus, this claim failed to adequately apprize the state courts of the nature of the error allegedly made by appellate counsel and failed to exhaust the ineffectiveness-as-cause argument that counsel failed to challenge the sufficiency of the proportionality review.

Moreover, petitioner apparently abandoned this claim of ineffectiveness-as-cause on appeal from denial of the Rule 32 petition. Although the claim of ineffective assistance of appellate counsel was pled in the petition, petitioner's brief on appeal of the Rule 32 proceedings makes no mention of the assertion that counsel was ineffective because he failed to challenge the absence of meaningful appellate review of death sentences. (See Brief of Appellant, Tab R-42). Not surprising, the opinion of the Alabama Court of Criminal Appeals disposing of the Rule 32 appeal also makes no mention of this particular ineffectiveness claim. Thus, even if raised at the Rule 32 pleading stage, it was not exhausted by presentation on appeal, resulting in its procedural default. Esslinger v. Davis, 44 F.3d 1515 (11th Cir. 1995)(failure to appeal a claim denied in a post-conviction petition is a procedural default of the claim). Being itself procedurally defaulted, it cannot establish "cause" to excuse the procedural default of the underlying substantive claim. Edwards v. Carpenter, 529 U.S. 446, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000); Hill v. Jones, 81 F.3d 1015 (11th Cir. 1996).

As mentioned in this court's footnote 22, however, the court doubts that the procedural default identified by the Alabama Court of Criminal Appeals is an "adequate" ground for denying relief. See Lee v. Kemna, 534 U.S. 362, 376, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002)("There are, however, exceptional cases in which exorbitant

-123-

application of a generally sound rule renders the state ground
inadequate to stop consideration of a federal question."). Turning
to the merits of the claim, it is clear that the Supreme Court has
never mandated proportionality review as an indispensable part of
a constitutionally sound capital sentencing scheme. In <u>Pulley v.
Harris</u>, 465 U.S. 37, 104 S. Ct. 871, 79 L. Ed.2d 29 (1984), the
Court squarely rejected the notion that proportionality review is
constitutionally necessary in capital sentencing schemes using
other means to assure that the sentence is not arbitrarily applied.

> That <u>Gregg</u> and <u>Proffitt</u> did not establish a
> constitutional requirement of proportionality review is
> made clearer by <u>Jurek v. Texas</u>, 428 U.S. 262, 96 S.Ct.
> 2950, 49 L.Ed.2d 929 (1976), decided the same day. In
> <u>Jurek</u> we upheld a death sentence even though neither the
> statute, as in Georgia, nor state case-law, as in
> Florida, provided for comparative proportionality review.

<u>Pulley v. Harris</u>, 465 U.S. 37, 48, 104 S. Ct. 871, 878, 79 L. Ed.2d
29 (1984). As long as the sentencing scheme provides for
assurances of rationality and guidance for the sentencing
authority, proportionality review is not necessary. For example,
some means by which arbitrariness can be checked include limiting
the number and types of offenses subject to the death sentence,
bifurcating proceedings, requiring a finding of aggravating
circumstances, and consideration of mitigating circumstances. All
of these features are present in the Alabama capital sentencing

scheme, thus eliminating the constitutional need[23] for proportionality review under Pulley. See also Lindsey v. Smith, 820 F.2d 1137 (11th Cir. 1987). Regardless of the adequacy of the proportionality review conducted by the state courts, habeas relief is not warranted because proportionality review is not required by federal law. There not being a violation of federal constitutional law, Habeas Claim G is due to be denied.

V. Habeas Claim H (Electrocution is Cruel and Unusual Punishment)-- Petitioner alleges at paragraphs 120 through 124 that electrocution as a means of carrying out the death sentence constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. At the outset, it appears that this claim is now moot, given that Alabama changed its method of execution to lethal injection in 2002. Alabama Code § 15-18-82 (2002)[24]. To the extent it is not moot, it is procedurally defaulted because it was not raised at trial or on direct appeal. Jones v. State, 753 So. 2d 1174, 1205-6 (Ala. Crim. App.), cert.

---

[23] Insofar as petitioner alleges that the state courts failed to conduct an adequate proportionality review under state law, the claim fails to state a violation of a federal right; federal habeas corpus is not available to correct a violation of state law. Pulley v. Harris, 465 U.S. 37, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984).

[24] Ala. Code § 15-18-82 was amended, effective July 1, 2002, to make lethal injection the default method of execution in Alabama. See Ala. Act 2002-492, § 2.

<u>denied</u>, (Ala. 1999).   Further, petitioner's contention that the
ineffectiveness of his attorneys constitute "cause" to excuse the
default fails because the Alabama Court of Criminal Appeals
specifically considered it and found counsel not ineffective for
failing to raise a challenge to the manner of execution.   That
finding is not contrary to or an unreasonable application of
federal law as found by the Supreme Court and, therefore, is
entitled to deference. 28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>,
529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).   Lacking
"cause" to excuse the default, the claim must be denied.


     <u>VI.  Habeas Claim I</u> (Violation of Right to Impartial Jury)--
Petitioner alleges at paragraphs 125 through 127 of the petition
that he was deprived of a fair and impartial jury because a
particular juror, Juror Moss, failed to disclose during *voir dire*
that he knew the sheriff and deputies involved in the
investigation, and that he was acquainted with the victims and was
familiar with their house from having visited it.   This claim was
raised as Claim R in the petitioner's Rule 32 petition, and an
evidentiary hearing on the claim was conducted by the trial court.
The Alabama Court of Criminal Appeals addressed this issue, stating
the facts and law as follows:

          To determine whether a defendant was prejudiced by a
          juror's failure to respond truthfully to a question
          during voir dire examination, the test is whether the

defendant actually was prejudiced. *Knight v. State,* 710 So. 2d 511 (Ala.Cr.App. 1997). See *Dawson v. State,* 710 So. 2d 472 (Ala.1997). To assist in the determination of prejudice, the following factors have been considered pertinent:

> "[the] temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror's inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about."

*Tomlin,* 695 So. 2d at 170, quoting *Johnson v. State,* 536 So. 2d 957, 958 (Ala.Cr.App. 1987), cert. denied, 490 U.S. 1046, 109 S.Ct. 1955, 104 L.Ed. 2d 424 (1989). "'Thus, the facts in each case must be considered individually and much will remain in the discretion of the trial judge.'" *Tomlin,* 695 So.2d at 170, quoting *Parish v. State,* 480 So. 2d 29, 30 (Ala.Cr.App. 1985). In light of the foregoing caselaw, we will now address Jones's[sic] allegations of juror misconduct separately.

*1. Juror J.M.'s association with various witnesses.*

Jones's[sic] counsel asked the following question during voir dire examination of the jury venire:

> "Do any of you know [Sheriff] J.C. Carr? Everyone in the county knows J.C. Carr—72% of you voted for him and kept him in office for six terms. My question would be with respect if you know him on a personal basis—member of the same church, or social organizations that you felt it would affect the way you receive the testimony from J.C. or some of his deputies? Mr. Tom Ed Dick[ey], do any of you know him? Mr. Billy [Erbin]? Mr. Fred [Alcorn]? Do any of you know J.C. on a personal basis.?"

(C.R. 340.) [Juror Moss] did not respond to this question and was selected as a member of the jury. Just prior to his Rule 32 hearing, Jones learned that [Juror Moss] knew the sheriff and several of his deputies.

-127-

During the hearing, [Juror Moss] testified as follows concerning any effect his acquaintanceship with the sheriff and his deputies had upon his role as a juror:

> "[Jones's [sic] counsel]:  In fact, you knew just about everybody around, didn't you?
>
> "[Juror J.M.]:  Well, yeah.
>
> "[Jones's counsel]:  You knew Judge NeSmith who was the judge at the time of the trial."
>
> "[Juror J.M.]:  Yeah, uh-huh.
>
> "....
>
> "[Jones's counsel]:  And you knew officer Tom Ed Dickey?
>
> "[Juror J.M.]:  Yes.
>
> "[Jones's counsel]:  And you knew officer Fred Alcorn?
>
> "[Juror J.M.]:  Yeah.
>
> "[Jones's counsel]:  And you knew officer Billy Erbin?
>
> "[Juror J.M.]:  Yeah.
>
> "[Jones's counsel]:  And you knew the sheriff, J.C. Carr?
>
> "[Juror J.M.]:  Yeah, right.
>
> "[Jones's counsel]:  Do you recall whether you informed the court whether you knew these people?
>
> "[Juror J.M.]:  I don't recall. I don't believe I was asked.
>
> "[Jones's counsel]:  Were you questioned by any of the attorneys for the defendant as to whether or not you knew any of those people?

"[Juror J.M.]:   Yeah, I think so.   I don't--you know, that has been a long time ago.

"[Jones's counsel]:  Sure, I understand.  But do you recall whether in court in front of the Judge-

"[Juror J.M.]:  I believe Judge NeSmith, yeah.

"[Jones's counsel]:   Okay.  Did you know Officer Tom Ed Dickey well enough to form an opinion as to whether or not you found him to be an honest and truthful person?

"[Juror J.M.]:  Yeah.

"[Jones's counsel]:  And was the same true of Fred Alcorn?

"[Juror J.M.]:  Yeah.

"[Jones's counsel]:  And Billy Erbin?

"[Juror J.M.]:  Yeah.

"[Jones's counsel]:  And Sheriff Carr?

"[Juror J.M.]:  Yeah.

"....

"[Prosecutor]:  [J.M.], the fact that you knew Judge NeSmith, Mr. Dickey, Mr. Alcorn, Mr. Erbin ..., did that effect [sic] your verdict?

"[Juror J.M.]:  No, un-un.

"[Prosecutor]:  Do you recall being asked that in court by a lawyer?

"[Juror J.M.]:  I don't recall it, no.   It could have happened but I don't recall it being asked.

"[Prosecutor]:   So, do you recall the instructions of the court that you were

-129-

supposed to make your decision on the verdict
and on the sentence based upon what came from
that bench right there and instructions from
the Judge?

"[Juror J.M.]:  Right, uh-huh.

"[Prosecutor]:  And even though you knew these
people and you testified that they were
truthful people, were you able to put that out
of your mind to come to a deliberations?

"[Juror J.M.]:  Render a verdict, yeah.

"[Prosecutor]:  Did you in fact render your
decision based upon only what came from the
witness stand?

"[Juror J.M.]:  What we heard, yeah.

"[Prosecutor]:  And the instructions from the
Judge?

"[Juror J.M.]:  Yeah."

(R. 262-66, 273-74.)

We are unwilling to say that [Juror Moss] failed to
respond truthfully to the question posed by Jones's
counsel during voir dire examination.  It is significant
that Juror [Moss] actively engaged in voir dire and when
asked admitted that he knew the victims.  As asked, the
question left room for subjective interpretations by the
veniremembers.  Therefore, we do not find that Juror
[Moss's] failure to respond to this question constitutes
juror misconduct.

Moreover, Juror [Moss] testified at the Rule 32 hearing
that even though he knew these witnesses and perhaps had
formed an opinion that they were truthful, he based his
verdict on the testimony presented and on the trial
court's instructions.  Because no evidence was presented
that Juror [Moss's] acquaintanceship with the sheriff and
his deputies actually prejudiced Jones, we find no basis
for reversal on this claim. . . .

-130-

*2. Juror J.M.'s association with the victims and his knowledge of the "layout" of the victims' house.*

The trial court asked the following question during voir dire examination of the jury venire:

> "Do any of you ladies and gentlemen of this jury venire know anything about the facts of this case which would influence your verdict one way or the other?"

(R. 8.)  Although [Juror Moss] admitted that he knew the victims, he did not reveal that he had frequented the victims' house.  Just before his Rule 32 hearing, Jones learned that [Juror Moss] had made service calls to the victim's [sic] house.

During the hearing, Juror [Moss] testified as follows concerning his acquaintanceship with the victims and his knowledge of the layout of their house:

> "[Jones's counsel]:  Prior to the beginning of the trial in 1982 did you know Carl Willie Nelson?
>
> "[Juror J.M.]:  Yeah.
>
> "[Jones's counsel]:  And did you know him quite well?
>
> "[Juror J.M.]:  Yeah, I had done work for them.
>
> "[Jones's counsel]:  You did work at their house on more than one occasion?
>
> "[Juror J.M.]:  Yeah, uh-huh.
>
> "[Jones's counsel]:  And of course during that work you became quite familiar with the interior of that house;  is that correct?
>
> "[Juror J.M.]:  Yeah, some parts of it.
>
> "[Jones's counsel]:  Which parts?

"[Juror J.M.]:  The kitchen, back porch, well pump, washing machine.

"[Jones's counsel]:  And you knew the layout of the house, how the rooms were arranged, that sort of thing?

"[Juror J.M..]:  Just the back porch and kitchen.

"[Jones's counsel]:  At the time of the trial did you consider the Nelsons to be clients or customers of yours?

"[Juror J.M.]:  Well at the time I knew them I was working with a local gas company down here doing their service work.

"[Jones's counsel]:  How many times prior to your service on the jury had you been in the Nelson home?

"[Juror J.M.]:  Oh, two or three times.

"[Jones's counsel]:  And you understood that that was the same location that the events in question in the trial occurred?

"[Juror J.M.]:  Yeah. Yeah.

"[Jones's counsel]:  Now, when you were following the evidence and the testimony of the trial, you had a picture in your head of that scene, that house where the events occurred;  is that right?

"[Juror J.M.]:  Well I knew where the location was.

"[Jones's counsel]:  And you were familiar with the house, you could recall what it looked like?

"[Juror J.M.]:  Just the kitchen and the back porch."

(R. 266-68.)

We are unwilling to say that [Juror Moss] responded untruthfully to the question posed by the trial court during voir dire examination and that his failure to respond constituted juror misconduct.  The question, "Do any know anything about the *facts* of this case which would influence your verdict one way or the other?" left room for subjective interpretations.  From the testimony presented at the Rule 32 hearing, Juror [Moss] had limited knowledge of the victims' house.  We do not find the fact that Juror [Moss] had made two or three service calls and knew the kitchen and back porch of the victims' house, in light of the fact that the murders occurred in another location in the house, to constitute "facts of this case."  Moreover, Jones had been informed that [Juror Moss] knew the victims and counsel could have explored during voir dire examination the basis of that knowledge.  Finally, Jones has failed to establish that [Juror Moss's] failure to indicate that he had frequented the victims' house on two or three occasions before the murders prejudiced him.  Therefore, we find no basis for a finding that J.M.'s actions were prejudicial.  See also *Brownlee v. State,* 545 So. 2d 151 (Ala.Cr.App.1988), aff'd, 545 So. 2d 166 (Ala.), cert. denied, 493 U.S. 874, 110 S.Ct. 208, 107 L.Ed. 2d 161 (1989)(the mere fact that a juror is personally acquainted with the victim does not automatically disqualify him from sitting on the criminal jury).

Finally, we find nothing to indicate that Jones's trial counsel would have struck [Juror Moss] had he known the information [Juror Moss] revealed at the evidentiary hearing.  Consequently, Jones has not satisfied his burden of pleading and proving this claim.  See Rule 32.3 and 32.6(b), Ala.R.Crim.P.

<u>Jones v. State</u>, 753 So. 2d 1174, 1200-1203 (Ala. Crim. App.), <u>cert. denied</u>, (Ala. 1999).

The court cannot say that these conclusions are contrary to or an unreasonable application of Supreme Court precedent, and, thus, they are entitled to deference.  In essence, reviewing the evidence presented at the Rule 32 hearing, the Court of Criminal Appeals

-133-

found that petitioner had not proven that he suffered actual prejudice from Juror Moss's failure to reveal his acquaintance with the Sheriff, his deputies, the victims[25], or the victims' home. The right to a hearing to attempt to prove actual prejudice is the remedy provided by constitutional law, which he received in the Rule 32 proceedings. That he was unable to prove actual prejudice precludes relief.

In Smith v. Phillips, 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982), the United States Supreme Court discussed the constitutional right to an impartial jury and the remedy for an alleged violation of the right. The Court stated that it "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." Id. at 215. Due process does not require that every instance of potential bias by a juror result in the setting aside of the jury's decision. Rather, the defendant must be given an opportunity to prove that the possible bias caused him "actual prejudice." In refusing to apply a standard to proceedings in state court different from that in federal court, the Court explained:

---

[25] In fact, the trial record reveals that Juror Moss responded by raising his hand when asked whether any venireman knew the victims. See Trial Record at page 38. Thus, his acquaintance with the victims was made known during voir dire. The allegation that Juror Moss failed to disclose that he knew the victims is contradicted by the record and is meritless.

-134-

> Due process means a jury capable and willing to decide
> the case solely on the evidence before it, and a trial
> judge ever watchful to prevent prejudicial occurrences
> and to determine the effect of such occurrences when they
> happen. Such determinations may properly be made at a
> hearing like that ordered in <u>Remmer [v. United States</u>,
> 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954)], and
> held in this case.

<u>Id.</u> at 217. The right to be tried by an impartial jury carries no
implied prejudice; rather, actual prejudice must be proven at a
hearing for that purpose. The burden of proving prejudice falls to
the petitioner. <u>See, e.g.</u> <u>Williams v. Taylor</u>, 529 U.S. 420, 442,
120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000)(held: petitioner was
entitled to an evidentiary hearing because "[i]t may be that
petitioner could establish that [a particular juror] was not
impartial").

Here, petitioner was afforded an evidentiary hearing at which
he had the opportunity to attempt to prove actual prejudice from
Juror Moss's failure to disclose his familiarity with the
investigators and the victims' residence. The conclusion by the
state court is not factually unreasonable nor contrary to or an
unreasonable application of Supreme Court precedent. Factually,
the trial record reveals that petitioner was not surprised by the
fact that Juror Moss knew the sheriff or the victims. Moss
indicated that he knew the victims, and everyone acknowledged that
the sheriff was well-known by many people in Blount County. Moss's
testimony negates any implication that his acquaintance with the

sheriff (or, by extension, the sheriff's deputies) and the victims caused him to consider the case any differently than if he had not known them.  The juror's testimony that he was not prejudiced by his knowledge of the people involved was competent evidence of the lack of bias.  In rejecting the argument that the "self-justification" of a juror testifying that he was not biased is inherently suspect, the Supreme Court said:

> As we said in <u>Dennis v. United States</u>, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950), "[o]ne may not know or altogether understand the imponderables which cause one to think what he thinks, but surely one who is trying as an honest man to live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a certain matter." <u>Id.</u>, at 171, 70 S.Ct., at 523. <u>See also</u> <u>United States v. Reid</u>, 12 How. 361, 366, 13 L.Ed. 1023 (1852).

<u>Smith v. Phillips</u>, 455 U.S. 209, 217 n.7, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).

Thus, given Juror Moss's Rule 32 testimony and the absence of any other evidence establishing actual bias by him, his mere failure to reveal his acquaintance with the sheriff and the sheriff's deputies[26] fails to establish a violation either of

_____

[26] It is worth noting that one issue concerning the testimony of the deputies relates to their credibility regarding the circumstances of petitioner's confession.  The deputies testified that no promise of benefit or coercion was used to obtain the statement.  Petitioner testified that he gave the statement because the deputies told him it would help him get bond.  Nevertheless, the assessment of their credibility on this point was for the trial judge, during the hearing to suppress the statement, not the jury. Thus, Juror Moss's failure to disclose his acquaintance with the deputies did not result in actual prejudice in this regard because

-136-

petitioner's Sixth Amendment right to an impartial jury or his Fourteenth Amendment right to due process. Likewise, given that Juror Moss *did* disclose his familiarity with the victims, his failure to disclose that he had been in parts of the victims' home was not prejudicial. An astute lawyer would assume that, if he knew the victims, he might also be familiar with their house, and counsel could go into further *voir dire* examination on that point, if necessary. Additionally, nothing about the layout or condition of the house itself seems to have had any significance in the evidence about the crime; there was no critical debate at trial concerning the location of the crime. This is all to say that the determination by the Alabama Court of Criminal Appeals that Juror Moss's failure to reveal this information caused no actual prejudice is factually correct and reasonable. As such, it is entitled to deference under 28 U.S.C. § 2254(d), and habeas relief is not warranted on this claim.

VII. Habeas Claim J (Juror Misconduct During Deliberations)-- At paragraphs 128 and 129 of the petition, petitioner avers that he was deprived of a fair trial because Juror Moss injected improper information into the deliberations of the case. He alleges that

---

Moss was not called on to assess the credibility of the testimony of deputies surrounding the taking of the statement.

during deliberations at the sentencing phase[27], Moss told the other jurors, incorrectly and perhaps improperly, that petitioner would be paroled after a few years in prison unless the death penalty were imposed.   This claim was raised in his Rule 32 petition and was one of the subjects of testimony at the hearing.   The trial court rejected relief and on appeal, the Alabama Court of Criminal Appeals also concluded that it did not warrant a new trial or sentencing proceeding.   The Court of Criminal Appeals wrote:

> Additionally, we reject Jones's[sic] claim that his "death sentence was the result of coercive influences brought into the jury deliberations which were outside the scope of the evidence and judicial control." (Appellant's brief at p. 97.)   Specifically, he argues that a juror's statement that "if we give him life that maybe in a few years that he would be up for parole" improperly persuaded others to sentence him to death. (R. 275-76.)
>
> Testimony at the Rule 32 hearing indicated that before reaching its 12-0 advisory verdict recommending a sentence of death, the jury voted several times.   Several ballots resulted in a 10-2 determination to recommend death.   One of the two individuals who initially voted against death testified that she changed her vote in favor of death after [Juror Moss] made the statement regarding parole.
>
> "A juror cannot impeach his verdict by later explaining why or how the juror arrived at his or her decision." *Adair v. State,* 641 So. 2d 309, 313 (Ala.Cr.App.1993).
>
> Moreover, Rule 606(b), Ala.R.Evid., provides, in pertinent part:

---

[27]   Because the allegedly improper comment was made during deliberations at the sentencing phase, not the guilt/innocence phase, it is clear that the conviction is not implicated in this claim, only the death sentence recommended by the jury.

"Upon an inquiry into the validity of a verdict or indictment, a juror may not testify in impeachment of the verdict or indictment as to any matter or statement occurring during the course of the jury's deliberations or the effect of anything upon that or any other juror's mind or emotions as influencing the juror as to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes." [Footnote omitted].

We find no merit to Jones's[sic] claim because it was based on prohibited testimony. A consideration of the claim would destroy the integrity of the jury system, encourage the introduction of unduly influenced juror testimony after trial, and discourage jurors from freely deliberating, and inhibit their reaching a verdict without fear of post-trial harassment, publicity, or scrutiny. See *Ex parte Neal,* 731 So. 2d 621 (Ala. 1999); and *Barbour v. State,* 673 So. 2d 461, 469–470 (Ala.Cr.App. 1994), aff'd, 673 So. 2d 473 (Ala. 1995), cert. denied, 518 U.S. 1020, 116 S.Ct. 2556, 135 L.Ed. 2d 1074 (1996).

Furthermore, Jones has failed to show that he suffered any prejudice in this regard. "[T]he judge, and not the jury, is the final sentencing authority in criminal proceedings.' *Ex parte Hays,* 518 So. 2d 768, 774 (Ala. 1986)." *Ex parte Giles,* 632 So. 2d 577, 583 (Ala. 1993), cert. denied, 513 U.S. 1199, 115 S.Ct. 1271, 131 L.Ed. 2d 149 (1995). Here, the challenged verdict is advisory. A jury during the sentencing phase only needs 10 votes to render an advisory verdict of death. Before [Juror Moss's] alleged coercive statement the vote was 10-2 for a recommendation of death; therefore, we find [Juror Moss's] alleged improper influence to be at most harmless error. Rule 45, Ala.R.App.P.

-139-

Jones v. State, 753 So. 2d 1174, 1203-1204 (Ala. Crim. App.), cert. denied, (Ala. 1999). This resolution of the claim is entitled to deference unless it is contrary to or an unreasonable application of Supreme Court precedent. See 28 U.S.C. § 2254(d).

The injection of improper evidence or information into the jury's deliberation requires a new trial only if it results in actual prejudice to the defendant; if the improper evidence or information was harmless beyond a doubt, the defendant has suffered no prejudice. See Rushen v. Spain, 464 U.S. 114, 121, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983)("[T]he state courts had convincing evidence that the jury's deliberations, as a whole, were not biased by the undisclosed communication of juror Fagan's recollection. The lower federal courts should have deferred to this presumptively correct state court finding and therefore found the alleged constitutional error harmless beyond a reasonable doubt"). Thus, petitioner was required to show at the Rule 32 hearing that the comment by Juror Moss actually prejudiced the jury's deliberation of the sentence to be imposed.

The state appellate court's discussion of the rule of evidence prohibiting a juror from testifying about the process of deliberation is grounded on the idea that Juror Moss's comment was not "extraneous information" injected into the deliberations. His belief that petitioner would be released after only a few years in prison unless the death penalty was imposed was one of the false

-140-

ideas brought to the discussions by the jurors themselves; even though factually wrong, it was part and parcel of the deliberative process itself, not something "extraneous" to the process.  As such, the appellate court correctly concluded that the evidence offered on this point was nothing more than prohibited juror testimony about the deliberative process, that is, what discussions influenced and shaped the jury's decision.  The conclusion that petitioner could not attack the verdict on the basis of that testimony was not contrary to or an unreasonable application of Supreme Court precedent.

Likewise, the conclusion that Juror Moss's comment, even if improper, was harmless error also is not contrary to or an unreasonable application of Supreme Court precedent.  As the Alabama Court of Criminal Appeals noted, before Moss made the comment, the jury had voted 10 to 2 to recommend the death sentence, which was legally sufficient to support the recommendation.  Although the vote count became unanimous after it was made, Moss's comment did not cause the vote count to swing from a recommendation of a life sentence to one of death.  Thus, whether or not Moss had ever made the comment, and regardless of its inaccuracy, the jury had already determined that it would recommend a sentence of death.  Moreover, the court properly noted that the jury's recommendation was merely advisory and the judge was the one who ultimately decided to impose a sentence of death.  It was thus

-141-

harmless beyond a doubt, and the resolution of this claim by the state courts is entitled to deference.

### CONCLUSION

Accordingly, for the reasons stated above, the court finds that the petition for writ of habeas corpus under 28 U.S.C. § 2254 is due to be denied and dismissed with prejudice. Likewise, the court finds that no evidentiary hearing is necessary for resolution of the claims in this court; petitioner's motion for a hearing will be denied. A separate order will be entered to that effect and denying the petition for relief.

The Clerk is DIRECTED to serve a copy of this memorandum opinion upon counsel for the petitioner and upon counsel for the respondents.

DATED this ___6___ day of _February_ , 2004.


_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE